# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38163-2010

LOWER PAYETTE DITCH COMPANY, a ditch company existing under the laws of the State of Idaho,

    Plaintiff-Respondent,

v.

ROBERT I. and MARGARET HARVEY,

    Defendants-Appellants.

Boise, December 2011 Term

2012 Opinion No. 1

Filed: January 5, 2012

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Third Judicial District of the State of Idaho, in and for Washington County. The Hon. Dennis E. Goff, District Judge.

The judgment of the district court is affirmed.

Judson W. Tolman, Walker Law Office, Weiser, argued for appellants.

Albert P. Barker, Barker Rosholt & Simpson, LLP, Boise, argued for respondent.

---

EISMANN, Justice.

This is an appeal challenging the district court's ruling that appellants were not the sole prevailing parties in this litigation. We affirm the judgment of the district court.

## I.

## Factual Background

Robert and Margaret Harvey (Defendants) own 220 acres of farmland on an elevated bluff that is near a section of an irrigation canal owned by the Lower Payette Ditch Company (Plaintiff) through which it delivers irrigation water to approximately 490 landowners and 13,000 acres of irrigated farmland. Defendants pump water from the Plaintiff's canal to irrigate their farmland.

On February 27, 2009, Plaintiff filed this action against Defendants. In its complaint, Plaintiff alleged that Defendants' irrigation of their farmland on the bluff caused landslides in 2003 and 2006 which damaged the canal; that as a result of the 2006 landslide a neighboring landowner whose property was also damaged in the landslide sued both Plaintiff and Defendants, which resulted in a jury verdict that 5% of his damages were caused by Plaintiff and 95% were caused by Defendants;[1] that there is continuing movement in the hillside below Defendants' farmland caused by their irrigation water; and that the only way to stabilize the hillside is for Defendants to stop the water from their irrigation practices. Plaintiff sought a declaratory judgment that it had no obligation to permit Defendants to continue pumping water out of the canal to irrigate their land on top of the bluff and an injunction enjoining them from continuing to do so. Defendants filed an answer denying the material allegations in the complaint and asking that Plaintiff not be granted any relief.

Plaintiff also sought a preliminary injunction. Based upon the written submissions by the parties and their oral argument at a hearing, the district court granted Plaintiff a preliminary injunction on June 4, 2009. The district court did not prevent Defendants from using canal water to irrigate their land, but it ordered that they could only do so on the condition that no surface irrigation water recharged the groundwater system. It ordered that all surface irrigation water be diverted away from the slide mass and that no excess irrigation water be applied to the crops being cultivated on their farmland.

Plaintiff later instituted proceedings alleging that Defendants were violating the injunction. In response, on July 15, 2009, the court added the following provisions to the preliminary injunction:

> 1) Within 14 days of July 7, 2009, the Defendants will install two (2) impeller flow meters at the outlet of each of the Defendants' pumps unless the parties' consultants jointly decide that the installation of only one impeller flow meter is necessary. Regular monitoring of the flow meters will be required and the results of such monitoring shall be shared with the Plaintiff as determined by the parties' consultants.
> 2) Within 14 days of July 7, 2009, the Defendants will install a soil moisture monitoring system on the property, the placement of the monitors and sensors to be agreed upon cooperatively by the parties' consultants. Regular monitoring of the soil moisture monitoring system will be required and the results

---

[1] Prior to the trial, Defendants reached a settlement with the landowner, and he dismissed his claims against them.

of such monitoring shall be shared with the Plaintiff as determined by the parties' consultants.

3) Within 30 days of July 7, 2009, the Defendants shall install monitoring wells on the Defendants' property, if after consultation among the parties' consultants the consultants reach the conclusion that the installation of such wells is necessary. If the consultants jointly agree that the installation of monitoring wells on the property is necessary, but due to matters outside the control of the parties, the wells cannot be installed within 30 days of July 7, 2009, then the Defendant shall endeavor to install such wells as soon as is reasonably possible.

4) If the Defendants fail to do any of the things set forth in this Order in the time frame prescribed by this Order the Plaintiff shall have full access to the Defendants' property to enter the property and do any of the things herein ordered.

On April 20, 2010, the district court entered an order stating that "[a]ny amended pleadings must be filed on or before May 3, 2010." On May 3, 2010, Defendants filed an amended answer and counterclaim. In their counterclaim, Defendants alleged that Plaintiff's requested injunction constitutes a taking of Defendants' water rights and 220-acre farm and that they are entitled to just compensation for such taking.

On May 10, 2010, Plaintiff filed an amended complaint adding a claim alleging that Defendants' irrigation of their farmland constituted a nuisance and asking the court to enjoin them from continuing to irrigate their property in a manner that continues to destabilize the hillside and to award Plaintiff damages. Defendants filed an answer denying Plaintiff's claims and an amended counterclaim adding a claim for damages pursuant to Idaho Code section 42-914 if they are deprived of the annual use of their water.

The parties noticed several motions for hearing on June 18, 2010. At that hearing, the district court refused to hear any of the motions because they were untimely. It also stated that it would not permit the amended complaint and amended counterclaim to be filed because they were past the court's deadline for filing amended pleadings. The court stated that the nuisance claim was merely another way of asking for an injunction, but that the request for damages was raising a new issue. Its objection to the amended pleadings seemed only to be that they raised new issues with respect to damages. Nevertheless, the court did not order the amended pleadings stricken. It simply indicated that it would not permit the new issues to be submitted to the jury.

On July 1, 2010, the parties filed a stipulation to resolve this lawsuit without admitting the cause of the landslides. The relevant terms of the stipulation were as follows:

3

3. The parties agree as to a "Division Point" in the 220 acre field which is located 505 feet north of the Boring Well 1. The land north of the Division Point is referred to as the "North Farmland" and the land between the Division Point and Boring Well 1 and also the irrigated land east of the cattle corrals referred to as the "South Farmland".

4. Harveys shall divert surface irrigation runoff away from the slide mass and no excess irrigation water (water not evaporated or used by the crops and which infiltrates into the groundwater system) shall be applied to the crops being cultivated on the 220 acres at issue in this litigation.

5. The existing flow meter installed to monitor water flow from Harveys' pumps, the existing soil moisture monitoring system, and the existing monitoring wells shall remain on Harveys' property, undisturbed by Harveys, for the duration of the Monitoring Period, as defined below, and for any extended period as may be agreed upon by the parties or ordered by the Court.

6. Within the South Farmland, irrigation will be done using the two existing rolling sprinkler lines, one which lies East and West and rolls North and South located on the irrigated land immediately north of the corrals, and the second Line which lies North and South and rolls East and West located on the irrigated land east of the corrals.

7. The irrigation by these sprinkler lines in the South Farmland shall be conducted on 12-hour rotations. Each nozzle installed in these two lines shall be not greater than standard five GPM flow control nozzles to be tested for wear and tear and replaced as recommended by the manufacturer. Testing of the nozzles shall be performed by Harveys at least every three years.

8. The above described irrigation practices shall be conducted for all crops raised on the South Farmland, All [sic] repair and maintenance on the two sprinkler lines, the main line and irrigation system located on the South Farmland shall be performed in a reasonable time and manner so as to avoid excessive spills and leakage.

9. The above stated restrictions on irrigation practices shall not apply to the North Farmland.

10. During the time period between entry of this Order and January 1, 2013, ("Monitoring Period"), LPDC shall be entitled to carry out reasonable monitoring of the presently existing wells, sensors and borings. During the Monitoring Period, LPDC shall be responsible for general maintenance and repairs relating to the wells, sensors and borings; however, Harveys shall be responsible for repairing any damage to the wells, sensors and borings caused by Harveys.

11. During the Monitoring Period, LPDC shall have the authority to install additional monitoring or borings on the Harvey property. LPDC shall deliver to Harveys and also to Walker Law Office a specific written proposal setting forth the additional monitoring and/or borings being requested and the rational [sic] for such request. Harveys shall have a response period of 30 days from the date LPDC's written proposal is received in which to object. If Harveys object and the parties are unable to reach an agreement then Harveys may petition the Court for relief.

4

12. In the event Harveys, individually or through legal counsel, do not respond in writing within 30 days from receipt of LPDC's written proposal, LPDC shall be entitled to proceed with their proposed additional monitoring and/or borings as set forth in their written proposal.

l3. All investigations, including monitoring, borings, studies, etc., conducted or requested by LPDC shall be done, if at all, entirely at LPDC's expense and at such times so as to minimize or avoid their impact on or interference with the Harveys' farming practices.

14. LPDC shall provide copies of all findings; tests, reports, analysis, and summaries completed by LPDC or LPDC's expert(s) relating to investigative activities conducted during the monitoring Period. LPDC shall mail copies of such documents to the Harveys and also to Walker Law Office.

15. Any findings, tests, reports, analysis, and summaries completed by Harveys or Harveys' expert(s) or consultants relating to investigative activities or irrigation practices conducted on Harveys' property during the Monitoring Period shall be provided to LPDC. LPDC shall mail copies of such documents to LPDC and to Barker Rosholt & Simpson LLP.

16. The above irrigation restrictions within the South Farmland shall extend through the end of the 2012 irrigation season and, unless otherwise agreed by the parties, such restrictions shall cease as of April 1, 2013. No later than January 1, 2013, and at the request of either party, the parties shall meet and confer as to whether the existing practices, ordered herein, should continue or be modified. If the parties agree to continue or modify existing practices, such extension or modification shall be submitted to the Court in the form of an Amended Order. If the parties cannot agree as to an extension or modification of the existing practices, then either party may file an appropriate motion with the Court seeking to modify the terms of this Order. Nothing in this Order shall be construed as determining whether to continue or modify the restrictions, or the parties respective burdens in seeking to continue or modify the terms of this Order.

The district court entered a judgment adopting the parties' stipulation and dismissed their respective pleadings. Defendants then sought an award of attorney fees pursuant to Idaho Code section 12-121. Plaintiff objected, and, after the matter was briefed and argued by the parties, the district court granted the objection. It held, "Applying the Rule 54(d)(l)(B) standard, this Court concludes that the final judgment or result obtained in this action provides no clear prevailing party." The court added that "both parties have prevailed in part." It denied Defendants' request for an award of attorney fees and court costs, and they timely appealed.

## II.

### The District Court Did Not Abuse Its Discretion in Finding that

**There Was No Prevailing Party.**

"The determination of who is a prevailing party is committed to the sound discretion of the trial court, and we will not disturb that determination absent an abuse of discretion." *Bream v. Benscoter*, 139 Idaho 364, 368, 79 P.3d 723, 727 (2003). "A trial court also has discretion to determine that there is no overall prevailing party." *Costa v. Borges*, 145 Idaho 353, 359, 179 P.3d 316, 322 (2008). In deciding whether a trial court abused its discretion, this Court considers:

> (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Rockefeller v. Grabow*, 139 Idaho 538, 545, 82 P.3d 450, 457 (2003).

In this case, the district court correctly perceived that the issue of prevailing party was one of its discretion. It also acted within the boundaries of this discretion and consistently with applicable legal standards. It quoted Rule 54(d)(1)(B), which states, "In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties." Applying that standard, the court reached its decision by an exercise of reason. In doing so, it stated:

> Viewing this action in its entirety, the Lower Payette Ditch Company prevailed in part and Harveys prevailed in part. There is no clear prevailing party from an overall view in this case. The Court views the Stipulation and final Order as requiring significant concessions by both parties on the relief sought by each of them. The Order requires all of the measures required by the Preliminary Injunction Orders to continue. It orders that the Harveys should test and replace the irrigation pressure nozzles in their irrigation system as necessary, which previously had not been done since 1987. Irrigation in certain fields will be limited to 12-hour rotations. The Ditch Company is entitled to continue monitoring and has the authority to install additional monitoring wells and soil borings as it deems necessary.

The district court also stated, "While the Ditch Company did not obtain all the relief it requested, neither did the Harveys."

Defendants contend that they were the prevailing parties for three reasons: First, during oral argument, Defendants' counsel asserted that the district court abused its discretion in

6

determining that there was no overall prevailing party because Plaintiff did not recover any relief at all in this litigation. Simply reading the provisions of the settlement shows that this assertion was false. Second, Defendants contend that the court abused its discretion because Plaintiff did not recover all of the relief it requested. Since a party that recovers less than the amount requested can still be a prevailing party, *Collins v. Jones*, 131 Idaho 556, 559, 961 P.2d 647, 650 (1998), the failure of a plaintiff to recover all of the relief requested obviously does not automatically make the defendant the prevailing party. Finally, Defendants contend that they are entitled to an award of court costs and attorney fees because they successfully defended a condemnation action. Even if this had been a condemnation action, which it clearly was not,[2] the determination of the prevailing party, if any, would have been within the discretion of the trial court. *State ex rel. Ohman v. Ivan H. Talbot Family Trust*, 120 Idaho 825, 828-29, 820 P.2d 695, 698-99 (1991). The Defendants have failed to show that the district court abused its discretion in determining that there was no overall prevailing party.

### III.

### Attorney Fees on Appeal.

Both parties seek an award of attorney fees on appeal. Defendants seek attorney fees pursuant to "the rule established in *Acarrequi* and as the prevailing party on appeal."[3] Because Defendants have not prevailed on appeal, they are not entitled to an award of attorney fees.

Plaintiff seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-121. Normally, we will only award attorney fees under that statute "when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Rueth v. State*, 103 Idaho 74, 81, 644 P.2d 1333, 1340 (1982). Attorney fees will not be awarded under that statute "where the losing party brought the appeal in good faith and where a genuine issue of law was presented." *Id.*

---

[2] An action to enjoin a landowner from using his property in a manner that causes physical damage to one's own property is not a condemnation proceeding.

[3] The case referred to is *Ada County Highway Dist. by and through Fairbanks v. Acarrequi*, 105 Idaho 873, 673 P.2d 1067 (1983), in which this Court held that "in condemnation actions, attorneys' fees may be awarded to the condemnee [under Idaho Code section 12-121] without a showing and finding that the action was brought and pursued 'frivolously, unreasonably or without foundation.' " *Id.* at 876-77, 673 P.2d at 1070-71. This Court also held that such decision "is a matter for the trial court's guided discretion and, as in other areas of the law, such award will be overturned only upon a showing of abuse." *Id.* at 877, 673 P.2d at 1071.

We award Plaintiff attorney fees on appeal under section 12-121. This appeal simply asked us to second-guess the district court's exercise of discretion without presenting any reasoned argument from which we could conclude that the district court abused its discretion in determining that there was no overall prevailing party. *Doe v. Doe*, 149 Idaho 669, 675, 239 P.3d 774, 780 (2010). Even with respect to Defendants' assertion that they were entitled to an award of court costs and attorney fees because this was a condemnation action, the district court pointed out that under *Ohman* there still had to be a prevailing party analysis. Using the factors in *Ohman*, the court concluded that "there is no basis for an award of fees to Harveys in this case." Defendants did not seek to distinguish *Ohman*. In fact, they did not even mention the case.

## IV.

### Conclusion.

We affirm the judgment of the district court. We award costs on appeal, including attorney fees, to respondent.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**