179 P.3d 316

Joe COSTA, an individual, Plaintiff–Counterdefendant–Appellant–Cross Respondent,

v.

Nelson BORGES, an individual, Defendant–Counterclaimant–Respondent–Cross Appellant.

No. 33752.

Supreme Court of Idaho, Boise, January 2008 Term.

Feb. 15, 2008.

Wright Brothers Law Office, Twin Falls, for appellant. Andrew B. Wright argued.

Hollifield Law Office, Twin Falls, for respondent. William Hollifield argued.

EISMANN, Chief Justice.

This is an appeal from a judgment winding up the affairs of a joint venture. The appellant challenges the failure of the trial court to remove the respondent from the joint venture, to find that the respondent breached the joint venture agreement, and to hold that the respondent cannot share in the profits of the joint venture. The appellant also contends that the trial court erred when it determined that a backhoe was property of the joint venture. The respondent cross-appeals the trial court's refusal to award costs and attorney fees. We affirm the judgment of the district court, with the exception that we remand for further findings regarding the backhoe.

## I. FACTS AND PROCEDURAL HISTORY

In August 2004, Joe Costa and Nelson Borges orally agreed to associate together to purchase and develop a fifteen-acre parcel of real property located in Jerome County. They intended to develop a subdivision with forty-one residential lots and three commercial lots. Costa was to contribute his expertise in developing the real property, and Borges was to contribute his equipment to clear and level the land. They agreed to contribute equal capital and labor, with the exception that Borges could elect to contribute additional capital to hire someone to do his share of the labor.[1] They also contracted work out to third parties.

Costa and Borges each contributed $55,000 to purchase the property and opened a joint bank account for the project. Between November 2004 and June 2005, they both worked on the project and met regularly to discuss financial matters regarding the development. They also each contributed additional sums to the joint venture. On June 23,

2005, they sold the first nine lots in their subdivision for $239,850, which was deposited into the joint account.

In June 2005, Costa and Borges decided to build a retaining wall on the property, doing it themselves to save money. They agreed to hire Costa's son to work on the wall, but a dispute arose between them over the source of funds from which to pay him. Costa contended that Borges should pay for that labor, and Borges contended the partnership should. In an attempt to resolve the dispute, their wives arranged for them to meet on June 27, 2005, at the Costa residence. The meeting did not go well, ending in a heated exchange between Costa and Borges after which Borges and his wife left. Borges testified that he left because Costa had attempted to physically harm him. Costa testified he told Borges to leave because Borges had called him a liar. The district court did not resolve this conflict in the testimony. The meeting resulted in a breakdown of the relationship between Costa and Borges. Thereafter, they did not communicate with each other.

Shortly after the meeting, Costa went to the development site to use a backhoe that Borges had provided. Costa discovered that there was no key in the backhoe, and he assumed that Borges would not let him use it. Therefore, he withdrew $10,000 from the joint account to purchase a backhoe, which he used on the project. Costa testified that the backhoe cost him $32,000. Costa continued working on the development and hired his son to do some of the work. Borges did not perform any further labor at the site.

On September 15, 2005, Costa filed this action. He alleged that the parties had formed a partnership, that Borges had breached the partnership agreement, and that he should be expelled from the partnership pursuant to Idaho Code § 53–3–601(5). Borges filed a counterclaim alleging that Costa had breached his fiduciary duties as a partner and the covenant of good faith and

---

1. Costa does not challenge the district court's finding that if Borges paid someone to perform his share of the labor, his payment would be considered a capital contribution, which he

would receive back if the project generated a net profit, rather than the payment of a personal obligation, for which he would not be entitled to reimbursement.

fair dealing. Borges sought the appointment of a receiver, the dissolution of the partnership, and the winding up of its affairs.

On November 3, 2005, the remaining lots were sold for $1,093,300. Between December 2005, and February 2006, Borges paid over $200,000 to creditors to prevent liens from being filed against the subdivision.

The matter was tried to the district court. It determined that the parties had formed a joint venture. It denied Costa's request to have Borges expelled from the joint venture and found that Borges had not violated the parties' agreement. It also denied Borges's request to appoint a receiver. The court dissolved the joint venture and equalized the parties' contributions by ordering Borges to pay $2,982.79 into the joint checking account. The court also ordered Costa to wind up the affairs of the joint venture, including selling the backhoe and depositing the proceeds into the joint checking account. Finally, the court ordered Costa to contract with a third party to complete approximately $8,000 in sidewalk work remaining to be done and to pay the cost out of the joint account. Costa timely appealed the court's judgment. Borges sought an award of court costs and attorney fees as the prevailing party, but the district court held that neither party prevailed. Borges cross-appealed that determination.

## II. ISSUES ON APPEAL

1. Did the district court err in holding that Borges could not be dissociated from the joint venture?

2. Did the district court err in finding that Borges did not breach the joint venture agreement?

3. Did the district court err in finding that the backhoe was a joint venture asset or in failing to consider that Costa paid part of the purchase price?

4. Did the district court err in failing to divide the joint venture assets unequally based upon the principles of unconscionability, good faith and fair dealing, and estoppel?

5. Did the district court abuse its discretion in determining that there was no prevailing party?

6. Is either party entitled to an award of attorney fees on appeal?

## III. ANALYSIS

### A. Did the District Court Err in Holding that Borges Could Not Be Dissociated from the Joint Venture?

■ Costa sought a determination that he and Borges had formed a partnership, that Borges should be held dissociated from the partnership, and that the partnership should continue in existence as a separate entity after that dissociation. Costa contended that Borges should only be entitled to receive the value of his capital account at the time of dissociation and that he should not share in the net profit of approximately $500,000. The district court found that Costa and Borges formed a joint venture, not a partnership, but that the Revised Uniform Partnership Act, I.C. §§ 53–3–101 et seq., (RUPA) should be applied to resolve the issues in this case. Neither party has challenged the application of RUPA.

■ Because of the similarities between partnerships and joint ventures, partnership law generally governs joint ventures. 46 Am.Jur.2d Joint Ventures § 2 (2006). A partnership is "an association of two (2) or more persons to carry on as co-owners a business for profit." I.C. § 53–3–101(8). "A joint adventure is generally a relationship analogous to but not identical with a partnership, and is often defined as an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit." Stearns v. Williams, 72 Idaho 276, 285, 240 P.2d 833, 839 (1952). However, RUPA dramatically changes one aspect of partnership law.

Under Idaho's former Uniform Partnership Law, I.C §§ 53–301 et seq. (repealed 2001), which generally corresponded to the Uniform Partnership Act, dissolution was defined as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." I.C.

§ 53–329 (repealed 2001). Dissolution could occur in several circumstances including "by the express will of any partner at any time," I.C. § 53–331(2) (repealed 2001), and by a court order when a "partner willfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him," I.C. § 53–332(1)(d) (repealed 2001). Upon dissolution, the partnership affairs had to be wound up. I.C. § 53–333 (repealed 2001). There was no provision for the continuation of the partnership business after dissolution. RUPA changes that.

■ Under RUPA, "[a] partnership is an entity distinct from its partners." I.C. § 53–3–201(a). A partner can be dissociated from a partnership without causing the dissolution of the partnership or requiring the winding up of its affairs. When a partner dissociates from a partnership, the partner loses the right to participate in the management and conduct of the partnership business. I.C. § 53–3–603(a). A partner who wrongfully dissociates can be liable to the partnership and other partners for damages caused by the dissociation. I.C. § 53–3–602(c). The dissociation of the partner does not require the dissolution of the partnership and the winding up of its affairs. In a partnership for a particular undertaking, a majority in interest of the remaining partners can agree to continue the partnership. I.C. § 53–3–801(2)(i). If the partnership continues, the dissociated partner's interest must be bought out at a price calculated pursuant to Idaho Code § 53–3–701(b), offset by any damages

for wrongful dissociation and any other amounts owing, Idaho Code § 53–3–701(c). In addition, a partner who wrongfully dissociates from a partnership for a particular undertaking may not be entitled to payment until the completion of that undertaking. I.C. § 53–3–701(h). When a partner dissociates, the partnership can also be dissolved and its business wound up, I.C. § 53–3–801, but Costa did not contend that that should occur in this case.

■ Although a partnership is now an entity distinct from its partners, "a joint venture is not an entity separate and apart from the parties composing it." *Clawson v. General Ins. Co. of America*, 90 Idaho 424, 431, 412 P.2d 597, 601 (1966). There is no statute providing that a joint venture is an entity distinct from its members. There is no statutory provision allowing for the dissociation of a member from a joint venture and the continuation of the joint venture in business as a separate entity. That portion of RUPA providing for the continuation of a partnership as a separate legal entity after dissociation of a partner has no application to a joint venture.

■ The district court correctly determined that if one partner dissociated from a two-person partnership, there could no longer be a partnership to continue doing business because it takes at least two persons to have a partnership.[2] However, even if the joint venture had three members it could not continue doing business after the withdrawal of one member. Because "a joint venture is not an entity separate and apart from the parties composing it," *Id.*, a joint venture

2. Costa argues that the statutory definition of "legal entity" in Idaho Code § 53–3–101(6) means that there can be a one-person partnership. That statute provides, " 'Legal entity' means an association of one (1) or more persons created pursuant to statute for the purpose of transacting business, whether for profit or otherwise. It includes, but is not limited to, a corporation, a limited liability company, a partnership or a limited liability partnership."

The statute defines what a legal entity is; it does not purport to define what a partnership is. It states that a legal entity must be "created pursuant to statute." By statute, a partnership must consist of at least two persons. I.C. § 53–3–303(a). The definition for a legal entity is

broader than the definition for a partnership. A legal entity can be "an association of one (1) or more persons," I.C. § 53–3–101(6), while a partnership must be "an association of two (2) or more persons," I.C. § 53–3–101(8). Likewise, while a legal entity may be created for the purpose of transacting business "whether for profit or otherwise," I.C. § 53–3–101(6), a partnership must be formed for the purpose of carrying on a business "for profit," I.C. § 53–3–202(a). Thus, while all partnerships are legal entities, all legal entities are not partnerships. That is obvious from the definition that a legal entity "includes, but is not limited to, a corporation, a limited liability company, a partnership or a limited liability partnership," I.C. § 53–3–101(6).

cannot continue in business as a separate legal entity after one joint venturer withdraws. The district court did not err in rejecting Costa's claim regarding the dissociation of Borges.

## B. Did the District Court Err in Finding that Borges Did Not Breach the Joint Venture Agreement?

█ Costa claimed that Borges breached the joint venture agreement by failing to either perform equal labor or hire someone to do his share and by failing to contribute equal capital in a timely manner. Costa's son was hired to perform work on the retaining wall in place of Borges. Prior to the June 27 meeting, Borges paid Costa's son $1,139 for such work. Thereafter, Borges did not perform any work on the project, nor did he pay Costa's son or anyone else to do so. Costa's son continued working on the retaining wall and installed a manhole. He was paid $3,111 for working on the wall and $273 for installing the manhole.[3] The district court held that this was not a material breach of the joint venture agreement and adjusted the parties' capital accounts accordingly.

Between November 10, 2004 and June 24, 2005, Costa and Borges each deposited $139,272.34 into the joint account. Thereafter, Costa made net deposits totaling $199,526.55, but Borges did not deposit any additional sums. During the period from December 2005 through February 2006, Borges did pay $200,012.21 to creditors of the joint venture to prevent liens from being filed against the project. After determining the amounts that each party had contributed to the project, the district court ordered Borges to deposit $2,982.79 into the joint account in order to equalize his and Costa's capital accounts. Again, the district court held that Borges did not materially breach the parties' agreement.

Costa's sole claim in this litigation was that he and Borges had formed a partnership and

that Borges should be dissociated from that partnership. As a basis for expelling Borges, Costa relied upon Idaho Code § 53-3-601(5)(ii) which permits expulsion of a partner by judicial determination if the partner "willfully or persistently committed a material breach of the partnership agreement." As explained above, Costa is not entitled to have Borges dissociated from the joint venture and have it continue in business. Therefore, whether or not Borges committed a material breach of the partnership agreement is of no consequence.

█ Costa argues at length that the district court's findings show that Borges had breached the parties' agreement. What Costa misses is that the district court held that Borges did not commit a *material* breach of the agreement. Whether a breach of contract is material is an issue of fact. *Ervin Constr. Co. v. Van Orden*, 125 Idaho 695, 700, 874 P.2d 506, 511 (1993). The district court's findings in this regard are supported by substantial, albeit conflicting, evidence.

## C. Did the District Court Err in Finding that the Backhoe Was a Joint Venture Asset or in Failing to Consider that Costa Paid Part of the Purchase Price?

The district court held that the backhoe purchased by Costa was an asset of the joint venture. Costa challenges that finding on the ground that neither party claimed it was property of the joint venture and they both referred to it as being Costa's backhoe. Costa contends that the $10,000 he withdrew from the joint account to purchase the backhoe should be considered a loan from the joint venture.

█ Property is presumed to be partnership property if it was purchased with partnership assets. I.C. § 53-3-204(c). The same rule should hold true for a joint venture. In his 2004 and 2005 income tax returns, Costa listed the backhoe as property of the joint venture. He testified that he depreciated the backhoe in his 2005 income tax return. There was substantial, albeit

---

**3.** There was testimony that Costa's son also worked on the installation of the storm drain system, cut weeds, and helped back fill the curbs and sidewalks and that Costa agreed to offset that work against loans his son owed him. The

district court did not take this into consideration because there was no evidence as to the amount of the loans, the amount of the offset, or the hours worked.

conflicting, evidence supporting the district court's finding that the backhoe was property of the joint venture.

■ The district court ordered the backhoe sold and the proceeds deposited into the joint account. Even though Costa testified that the backhoe cost him $32,000, the district court did not address that issue. From the evidence presented, the $10,000 may have been simply the down payment to purchase the backhoe. In any event, the district court needs to determine the total cost of the backhoe, whether Costa paid any money to purchase it, and how any such payments should be treated.

**D. Did the District Court Err in Failing to Divide the Joint Venture Assets Unequally Based upon the Principles of Unconscionability, Good Faith and Fair Dealing, and Estoppel?**

■ Each party's share of the net profits from the joint venture was $259,742.90. Costa argued that because it was his labor and capital that completed the project, it is unconscionable for Borges to receive an equal share of the profits. He also argued that Borges should not receive an equal share because he breached the covenant of good faith and fair dealing. Finally, he argued that Borges's conduct after June 27, 2005, showed that he had withdrawn from the joint venture and he should be estopped from changing his position and claiming a share of the profits.

The district court found that it was not unconscionable for Borges to receive one-half of the net profits and that there is no evidence that Borges breached the covenant of good faith and fair dealing. The court also found that Borges did not withdraw from the joint venture. On appeal, Costa asserts that those findings are erroneous. The findings by the district court are supported by substantial and competent evidence. The district court did not err in rejecting these claims.

**E. Did the District Court Abuse Its Discretion in Determining that There Was No Prevailing Party?**

■ The district court determined that there was no prevailing party, and Borg-

es challenges that ruling on appeal. "The determination of who is the prevailing party for purposes of an award of attorney fees is within the trial court's discretion." *Hughes v. Fisher*, 142 Idaho 474, 484, 129 P.3d 1223, 1233 (2006). A trial court also has discretion to determine that there is no overall prevailing party. *Adams v. Krueger*, 124 Idaho 74, 77, 856 P.2d 864, 867 (1993). Costa's request to have Borges expelled was denied. Although Borges was granted his request for dissolution, his request for the appointment of a receiver was denied. The court ordered that Costa could wind up the affairs of the joint venture and that he may be entitled to compensation for doing so. Borges also was required to pay $2,982.79 to equalize the parties' capital accounts. Under the circumstances, we conclude that the court did not abuse its discretion in determining that there was no prevailing party.

**F. Is Either Party Entitled to an Award of Attorney Fees on Appeal?**

■ Costa seeks an award of attorney fees on appeal pursuant to Idaho Code § 12–121. Borges seeks an award pursuant to Idaho Code §§ 12–120 and 12–121. Under those statutes, attorney fees are only awardable to the prevailing party on appeal. In this case, Costa did not prevail on the issue of dissociation, but he did prevail regarding the cost of the backhoe. Borges did not prevail on his cross-appeal. Considering the mixed results, we hold that there is no prevailing party on appeal. Therefore, neither party is entitled to an award of attorney fees on appeal.

**IV. CONCLUSION**

We affirm the judgment of the district court except with respect to the cost of the backhoe. We remand this case for further findings regarding that issue. We do not award court costs or attorney fees to either party on appeal.

Justices BURDICK, J. JONES, W. JONES and HORTON concur.