# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46258

JOSEPH GUENTHER, an individual,

    Plaintiff-Counterdefendant-
    Respondent-Cross Appellant,

v.

MICHELLE RYERSON, an individual,

    Defendant-Counterclaimant-
    Appellant-Cross Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

Boise, November 2019 Term

Opinion filed: February 18, 2020

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Lynn G. Norton, District Judge.

The judgment of the district court is <u>affirmed in part, vacated in part, reversed in part, and remanded for further proceedings consistent with this opinion.</u>

Sasser & Jacobson, PLLC, Boise, for Appellant/Cross Respondent. James. F. Jacobson argued.

Givens Pursley, LLP, Boise, for Respondent/Cross Appellant. Amber N. Dina argued.

---

BURDICK, Chief Justice.

Michelle Ryerson appeals multiple decisions of the district court entered during the dissolution and winding up of West Foothills TIC, a partnership in which she was a partner. Specifically, Ryerson argues the district court misapplied the Idaho Uniform Partnership Act by entering an order requiring liquidation of the partnership's real property by sale at a fixed price, and by allowing her former partner the opportunity to purchase the property from the partnership. Ryerson also argues the district court erred in granting summary judgment on the issue of the real property's value as of the date of dissolution because, as the real property's owner, she is presumed competent to testify about its value. Finally, Ryerson argues the district

1

court erred in dismissing her counterclaim seeking a determination that she is entitled to 50 percent of the partnership's profits upon dissolution.

Joseph Guenther, the other partner in West Foothills TIC, also cross-appeals several decisions from the same proceedings. First, Guenther argues the district court misapplied a provision of the Idaho Uniform Partnership Act by determining that it could not allow Guenther to purchase the partnership's real property without the consent of the partnership's creditors. Guenther also argues the district court erred in declining to award him attorney's fees in the action below because he was the prevailing party and the gravamen of his claims was a commercial transaction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Prior to June 2009, Joseph Guenther and Michelle Ryerson were in a relationship as an unmarried couple. Initially, they were not business partners; however, in June 2009, the couple purchased real property at 8571 N. Lost Sage Lane, Boise, Idaho 83714 and formed a partnership, West Foothills TIC (notwithstanding the use of TIC in the name of the entity, the parties do not assert that they intended to hold the property as tenants in common). There was no written partnership agreement. There also was no clear agreement between the parties allocating contributions of labor or partnership expenses to either partner. Nor was there an agreement clearly delineating which partner was responsible for which partnership liability. However, both parties agreed that the purpose of the partnership was to purchase the property and develop it into a vineyard for profit. Both parties also agreed the property would be used to provide housing for Guenther, Ryerson, and Ryerson's two children. The parties commingled their personal funds with partnership funds, paying for the partnership's liabilities using funds from individual checking accounts, personal credit cards, a joint checking account, and a credit card they held together.

To build their home on the property, Guenther and Ryerson obtained a $528,600 construction loan from Zions Bank, which eventually was converted into a 30-year mortgage. Construction began in August 2015 and the house was completed in January 2016. Ryerson and her two children moved into the house in January 2016, followed by Guenther in May 2016. Both parties invested a considerable amount of personal funds and labor into development of the vineyard and construction of the house.

On March 26, 2017, Guenther and Ryerson ended their relationship and decided they could not continue to operate the business as partners. Guenther initiated the present action in June 2017 when he filed a complaint and then an amended complaint alleging four causes of action: (1) dissolution of the partnership; (2) unjust enrichment; (3) promissory estoppel; and (4) a request for declaratory judgment quieting title to the property. About a week later, Ryerson filed an answer and counterclaim against Guenther for judicial dissolution of the partnership and a determination that she had a 50 percent ownership stake in the partnership. Both parties agreed that the end of their personal and business relationship on March 26, 2017, was a dissociative act requiring dissolution and winding up of the partnership.

At the beginning of the winding up process, Ryerson asked the court to liquidate the partnership's assets by sale, including the property on Lost Sage Lane. Guenther, on the other hand, asked the court to allow him to buy out Ryerson's interest in the property, so that he could continue to live there and work the vineyard. On January 5, 2018, the district court entered an order granting Ryerson's motion to liquidate the partnership's assets. In its decision, the district court explained that, under the Idaho Uniform Partnership Act, it did not have the power to release Ryerson from her mortgage liability without Zions Bank's consent.

Guenther subsequently filed a motion to reconsider the court's order granting Ryerson's motion to liquidate (Guenther's first motion for reconsideration). After a hearing, the district court granted Guenther's first motion for reconsideration and ruled that it would not require the property on Lost Sage Lane to be liquidated by sale on the open market. Instead, the court entered an order permitting Guenther to buy out Ryerson's interest in the property because Guenther had presented new evidence that Zions Bank was willing to refinance the property in Guenther's name alone and would release Ryerson of all liabilities on the original mortgage.

Around the same time that he filed his first motion for reconsideration, Guenther also filed a motion for summary judgment on the issues of the value of the Lost Sage Lane property and each party's total contributions to the partnership. The district court granted that motion in part and denied it in part. The district court granted summary judgment on the issue of property value as of the date of dissolution, but denied summary judgment as to the amount of each party's contributions.

On the issue of property value, Guenther provided an expert appraisal valuing the property at $600,000. Ryerson provided her own testimony that the property was worth

3

"significantly more" than the amount stated in the appraisal obtained by Guenther, and that the "baseline asking price for the property should be no lower than $800,000." Acknowledging that Idaho law provides for a presumption that the owner of property is competent to testify as to its value, the district court determined that Ryerson had not stated an opinion as to the property's fair market or full cash value. Finding that Ryerson had not offered any admissible evidence as to the value of the property, the district court granted summary judgment determining the property to be worth $600,000 at the time of dissolution. Based on the $600,000 valuation, the district court also determined that the partnership had $144,789.92 of equity in the property as of the date of dissolution.

After those rulings, Ryerson filed a motion for reconsideration (Ryerson's first motion for reconsideration) seeking reconsideration of the February 16 decisions on Guenther's motions. At a March 29, 2018, hearing on Ryerson's first motion for reconsideration, the district court ruled from the bench in extensive detail, denying the motion in part and granting it in part. The district court denied the portion of Ryerson's motion that requested reconsideration of the order granting summary judgment as to the value of the Lost Sage Lane property. At the same time, the district court granted the portion of Ryerson's motion that requested reconsideration of the order allowing Guenther to buy out Ryerson's interest in the property. The district court reasoned that it could not enter an order allowing Guenther to buy out Ryerson's interest in the property under Idaho Code section 30-23-703(c) without the consent of the partnership. Because Ryerson did not consent to Guenther buying out her interest in the property, the district court determined that liquidation of the property by sale on the open market was the only option available, and entered an order to that effect.

A two-day court trial took place on April 2 and 3, 2018. Numerous exhibits were admitted, both parties and a number of witnesses testified, and counsel for both sides submitted written closing arguments to the court. The district court entered its Findings of Fact, Conclusions of Law under Idaho Rule of Civil Procedure 52 on May 14, 2018. The district court found by a preponderance of the evidence that the total amount of Ryerson's contributions to the partnership was $101,514.66. As for Guenther, the district court found by a preponderance of the evidence that the total amount of his contributions to the partnership was $330,163.22. The combined total contributions of Ryerson and Guenther were $431,677.88. Therefore, the district court determined that Guenther had made 76 percent of the total contributions to the partnership

4

and Ryerson had made 24 percent of the total contributions. It also determined that any increase in equity in the Lost Sage Lane property was 100 percent attributable to Guenther.

The district court's findings and conclusions also ordered Guenther and Ryerson to make additional capital contributions to the partnership in cash to pay off the partnership's mortgage with Zions Bank. However, the partnership already had sufficient assets to satisfy its obligation to Zions Bank, so Guenther filed a motion to clarify, arguing that the district court's order was not consistent with the Idaho Uniform Partnership Act's winding up provisions. The district court treated the remainder of Guenther's motion, which argued again that he should be allowed to purchase the property, as another motion for reconsideration (Guenther's second motion for reconsideration).

On July 2, 2018, the district court entered a Clarification of Conclusions of Law, Memorandum Decision Reconsidering Liquidation, in which it clarified its original Findings of Fact, Conclusions of Law, and granted Guenther's second motion to reconsider the March 29 ruling that the Lost Sage Lane property had to be liquidated by sale on the open market. In that decision, the district court reasoned that requiring the sale of the property on the open market would cause economic waste of the partnership's assets and unreasonably prolong the winding up process. Because Guenther wanted to purchase the property and appeared to have obtained financing through Zions Bank, the district court entered another order giving him the opportunity to do so. Specifically, the order provided that Guenther would be allowed to purchase the Lost Sage Lane property by July 31, 2018, if he refinanced through Zions Bank. If Guenther were unable or unwilling to purchase the property from the partnership, Ryerson would then have the opportunity to purchase the property "by August 31, 2018 for cash or by refinance . . . ." The district court also explained what a refinance and purchase of the property by either party must accomplish:

> [a]ny financing of the property must completely satisfy the partnership's entire debt to Zions Bank and result in termination of the deed of trust in Joseph Guenther and Michelle Ryerson's names. Any financing or cash contributions must also completely extinguish the pro rata share of equity . . . of the opposing party.

If neither party purchased the property by August 31, 2018, then the order required it to be sold on the open market. In that case, the price would be set at an amount equal to "the real property value in the appraisal Guenther obtained in his efforts to refinance the property by July 31, 2018 plus six percent of that value."

5

The district court also entered an Amended Findings of Fact, Conclusions of Law and a Judgment dismissing Guenther's claims for unjust enrichment and promissory estoppel and Ryerson's counterclaim with prejudice. Guenther does not appeal the dismissal of his claims for unjust enrichment or promissory estoppel.

After Zions Bank refused to go forward with financing Guenther's purchase of the property, Guenther sought alternative financing through Guild Mortgage. On July 30, 2018, Guenther filed a motion requesting that the district court amend its order for sale of the property to provide him an additional two weeks to close his loan refinance with Guild Mortgage. The district court held a hearing on the motion on August 8, 2018. At the hearing, Guenther explained that Guild Mortgage had underwritten the loan and it was prepared to close on the sale of the property as soon as the next day if the district court were to grant Guenther's motion. Denying Guenther's motion, the district court ruled from the bench, stating:

> The issue at this point is simply an issue of credibility. This is Mr. Guenther's fourth attempt to present a financing scheme which he proposes would extinguish the liabilities of Ms. Ryerson and the partnership's debt to the creditor.
>
> The reason I fashioned the order the way that I had fashioned it was because of what was actually filed and actually on the record because of Zions Bank, in the second iteration, had represented that they did not have an objection to – that one was actually an assumption of the loan. And I had determined that an assumption of the loan did not extinguish Ms. Ryerson's liabilities; it had to be a new finance.
>
> So really moving from Zions Bank to Guild Mortgage is not just an issue of a typographical error in the Court's order for sale. Moving from Zions Bank, who had previously indicated in this litigation that it did not object to the refinance as a creditor of the partnership, to remove Zions Bank and substitute Guild Mortgage circumvents this Court's orders and its prior orders on the reconsideration.
> Because what I had actually reconsidered was the record before the Court, what was actually filed. And this is not a matter of simply changing Zions Bank to Guild Mortgage and changing a date in the Court's order. This is actually introducing another lending scheme without any indication in the record about whether Zions Bank, which is the creditor of the partnership, has evaluated or would oppose this scheme. And it would actually alter the record of the litigation even after trial.

6

> And so because of that, I am not going to change my previous order. Because of that, Mr. Guenther's time to actually purchase the property under the Court's order has now expired.

On August 14, 2018, Guenther filed another motion for reconsideration (Guenther's third motion for reconsideration), requesting the district court reconsider its decision denying his motion for an amended order for sale of the property. The district court denied the motion from the bench on September 5, 2018, explaining:

> The Court has discussed the case law of Arnold versus Burgess and Kelly versus Silverwood Estates at length in its previous decisions, and also the statutory basis for dissolution of a partnership and the requirement for consent of the partner and/or the third-party creditors in its earlier decisions.
>
> And the plaintiff again asked the Court to reconsider and allow additional time for the plaintiff to secure financing from a different lender, close on the real estate to avoid economic waste of the real property. And the issue of economic waste has previously also been discussed in the Court's decisions.
>
> So really for the reasons stated in the earlier decisions, as well as from the bench on August the 8th of 2018, the Court is going to deny reconsideration at this time and will not further amend the order for sale.

Because Ryerson did not then purchase the property, it was set to be listed and sold on the open market with the price set at an amount equal to the value in the appraisal obtained by Guenther in his efforts to refinance the property ($725,000), plus six percent. If it became necessary to list and sell the property, the order specified the procedures for doing so. First, Guenther would choose five possible realtors. Then, Ryerson would select one of those realtors to serve as the listing agent for the property. The listing agent at his or her discretion could reduce the price at which the property was listed so long as notice of each price reduction was provided to the district court. Finally, the district court retained jurisdiction over the sale. Before the property could be sold, both parties filed appeals, and this Court stayed the sale.

On appeal, Ryerson argues that the district court erred in the following ways: (1) granting summary judgment on the value of the property at the time of dissolution; (2) ordering the buyout of her interest in the partnership's real property as opposed to liquidation by sale; (3) fixing the price of the property at $725,000 plus six percent once sale of the property was ordered; (4) failing to determine that she is entitled to 50 percent of the partnership profits or

7

remaining surplus if funds remain after all of the partnership's liabilities and partner contributions are satisfied; (5) determining that the partners' respective interests in the partnership were based on their capital contributions to the partnership; and (6) dismissing her counterclaim.

Guenther argues in his cross-appeal that the district court erred in: (1) finding that, in winding up the partnership, Idaho Code section 30-23-703(c) prevented it from entering an order allowing Guenther to purchase the property from the partnership without the third-party creditor's consent; (2) ordering the sale of the property on the open market despite finding that doing so would cause significant economic waste of the partnership's assets; and (3) declining to award him attorney's fees below as the prevailing party.

## II. ISSUES ON APPEAL

A. Did the district court err in ordering the sale of the Lost Sage Lane property on the open market in winding up the partnership under the Idaho Uniform Partnership Act?

B. Did the district court err in determining Guenther was entitled to 100 percent of any increase in equity in the Lost Sage Lane property that occurred after the date of dissolution?

C. Did the district court err in granting summary judgment as to the value of the Lost Sage Lane property as of the date of dissolution?

D. Did the district court properly decline to award attorney's fees to Guenther under Idaho Code section 12-120(3) despite having found that he was the prevailing party?

## III. STANDARD OF REVIEW

We review summary-judgment rulings under the same standard used by the court below. *Hayes v. City of Plummer*, 159 Idaho 168, 170, 357 P.3d 1276, 1278 (2015) (citing *Gracie, LLC v. Idaho State Tax Comm'n,* 149 Idaho 570, 572, 237 P.3d 1196, 1198 (2010)).

> Summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party.

*Id.* (citations and quotation marks omitted).

This Court exercises free review over issues of statutory interpretation because they are questions of law. *State v. Owens*, 158 Idaho 1, 3, 343 P.3d 30, 32 (2015) (citing *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013)).

8

## IV. ANALYSIS

**A. In winding up the partnership, the district court erred in allowing each partner an opportunity to purchase the Lost Sage Lane property before requiring its sale on the open market.**

Though the district court went back-and-forth several times on the issue of whether it had the authority to allow Guenther to buy the Lost Sage Lane property instead of listing it for sale, it ultimately determined that it could do so with the consent of the partnership and its third-party creditors under Idaho Code section 30-23-703(c). On appeal, Ryerson argues the district court erred in applying section 30-23-703(c) during the winding up of the partnership because that section applies only when a partner dissociates from a partnership, and here, both partners sought dissolution. She further argues that, under Idaho Code section 30-23-806, sale of the property and distribution of the partnership's assets is the only means of winding up a partnership's affairs, at least where one partner seeks to force a sale.

Guenther also argues that the district court erred in applying section 30-23-703(c). Specifically, he argues the district court mistakenly believed its order allowing Guenther to purchase the Lost Sage Lane property from the partnership had to require the consent of Zions Bank (the third-party creditor). Guenther further argues that, under Idaho Code section 30-23-806 and Idaho case law, the district court was not required to order a forced sale of the partnership property and could have wound up the partnership by alternative means.

For the reasons below, we conclude that during judicial dissolution and winding up of a partnership's business under the Idaho Uniform Partnership Act, a partnership's assets must be sold for their fair market value unless the partners agree to an alternate method for distribution of partnership assets.

1. Idaho Code section 30-23-703(c) is inapplicable to the dissolution and winding up of a partnership under the Idaho Uniform Partnership Act.

Prior to 2001, the Idaho Uniform Partnership Act was modeled after the Uniform Partnership Act of 1914 (UPA). *Costa v. Borges*, 145 Idaho 353, 356, 179 P.3d 316, 319 (2008). However, in 1998, Idaho amended the Idaho Uniform Partnership Act to remodel it after the Revised Uniform Partnership Act (RUPA). 1998 Idaho Sess. Laws 226. The amendments became effective after January 1, 2001. *See* 1998 Idaho Sess. Laws 259. Therefore, despite its name, the Idaho Uniform Partnership Act ("the Act") is modeled after RUPA, not UPA. The Act

9

defines a partnership as "an association of two (2) or more persons to carry on as co-owners a business for profit . . . ." I.C. § 30-23-102(a)(8).

Under the Act, "[a] partnership is an entity distinct from its partners." I.C. § 30-23-201(a). Before Idaho adopted RUPA, a partner's withdrawal from a partnership automatically caused dissolution and winding up of the partnership. *St. Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 485, 224 P.3d 1068, 1074 (2009) (citations omitted). Now, "[a] partner who chooses to withdraw from the partnership is dissociated [under Idaho Code section 30-23-601(1)], but 'the dissociation of the partner does not require the dissolution of the partnership and the winding up of its affairs.'" *Id.* (quoting *Costa*, 145 Idaho at 357, 179 P.3d at 320). That is, dissociation of a partner *can* cause dissolution and winding up of the partnership, but no longer automatically causes dissolution in all circumstances.

The Act provides two distinct statutory pathways to follow upon a partner's dissociation. *See* I.C. § 30-23-603(a) ("If a person's dissociation results in a dissolution and winding up of the partnership's business, part 8 of this chapter applies; otherwise, part 7 of this chapter applies."). If a partner's dissociation does not result in the dissolution and winding up of the partnership, the dissociation provisions in Part 7 of the Act govern the rights of the dissociating partner, the partnership, and its remaining partners. But when a partner's dissociation does result in the dissolution and winding up of the partnership, Part 8 of the Act applies.

In the present case, both parties agreed that the end of their personal and business relationship on March 26, 2017, was a dissociative act requiring dissolution and winding up of their partnership. Both parties sought judicial dissolution, and further agreed that the Idaho Uniform Partnership Act governed the dissolution and winding up of their partnership.

Throughout the proceedings below, the district court relied on Idaho Code section 30-23-703(c) as providing it the authority to allow a partner to purchase partnership property during the winding up process. Ruling from the bench at the September 5, 2018, hearing, the district court explained that part of the reason it was denying Guenther's motion for reconsideration was because of "the requirement for consent of the partner and/or the third-party creditors" that it had discussed in its earlier decisions. At the August 8, 2018, hearing on Guenther's motion to amend the court's order for sale of the property, the court refused to amend its order reasoning that "[the proposed amended order was] actually introducing another lending scheme without any indication in the record about whether Zions Bank, which is the creditor of

10

the partnership, has evaluated or would oppose th[e] scheme." In its Clarifications of Conclusions of Law, Memorandum Decision Reconsidering Liquidation, the district court explained in detail each decision it had made regarding sale of the Lost Sage Lane property up to that point. At each stage, connecting all the way back to the district court's original decision regarding liquidation on October 26, 2017, the district court referred to Idaho Code section 30-23-703(c) as governing the potential sale to Guenther. Therefore, it is clear from the record that the district court was under the impression that Part 7 of the Act gave it the authority to allow Guenther to purchase the property, so long as Zions Bank consented to the arrangement.

However, Idaho Code section 30-23-703(c) does not apply to this case. As explained above, section 30-23-703(c) is a part of the dissociation pathway in the Idaho Uniform Partnership Act that applies when a partner dissociates from the partnership, but the partnership is not wound up and continues without the dissociating partner. Section 30-23-703(c) does not apply when a partnership is being dissolved and wound up pursuant to Idaho Code sections 30-23-801 et seq. In short, dissociation statutes do not apply to dissolution cases. *See* I.C. § 30-23-603(a). Because both parties in this case sought dissolution and winding up of the partnership, the district court erred when it determined that it could enter an order allowing Guenther to buy the Lost Sage Lane property from the partnership under section 30-23-703(c).

2. Judicial dissolution and winding up of a partnership under The Idaho Uniform Partnership Act requires liquidation of partnership assets by sale on the open market.

Having determined that Idaho Code section 30-23-703(c) does not apply, the question remains as to whether a court may allow a partner to purchase partnership property during the judicial dissolution and winding up of a partnership under Part 8 of the Idaho Uniform Partnership Act.

Idaho Code sections 30-23-801 et seq. govern the dissolution and winding up of a partnership in Idaho. *See* I.C. § 30-23-603(a). "Where partners mutually agree to a dissolution, any partner has the right to wind up partnership affairs in accordance with the [partnership] agreement." *Arnold v. Burgess*, 113 Idaho 786, 790, 747 P.2d 1315, 1319 (Ct. App. 1987) (citing I.C. § 53-337 (repealed 2001); *Burnham v. Bray*, 104 Idaho 550, 557, 661 P.2d 335, 342 (Ct. App. 1983)). *See also* I.C. § 30-23-802. Upon the application of any partner who has not wrongfully dissociated, "the district court may order judicial supervision of the winding up of a dissolved partnership" for good cause shown. I.C. § 30-23-802(e).

11

"Winding up is the process of settling partnership affairs after dissolution, and generally involves an accounting and liquidation of the partnership's assets." *Mays v. Davis*, 132 Idaho 73, 75, 967 P.2d 275, 277 (1998) (citing *Kelly v. Silverwood Estates*, 127 Idaho 624, 628, 903 P.2d 1321, 1325 (1995); *Arnold*, 113 Idaho at 790, 747 P.2d at 1319). The object of an accounting is to determine the value of each partner's interest in the partnership as of the date of dissolution and establish whether the partnership has any profits or losses. *Id.* (citing *Kelly*, 127 Idaho at 629, 903 P.2d at 1326). Ordinarily, the district court will order liquidation of partnership assets by sale and apply the proceeds according to the priorities set out in Idaho Code section 30-23-806. *Id.* (citing *Kelly*, 127 Idaho at 628, 903 P.2d at 1325) (referring to the priorities established in Idaho Code section 53-340 (repealed 2001), the precursor to Idaho Code section 30-23-806)).

Ryerson contends that, in the winding up process, all the partnership's assets must be reduced to cash before being distributed pursuant to section 30-23-806. She further claims that liquidation by sale on the open market is the only way to determine the property's true value. Guenther, on the other hand, argues that alternative means of winding up a partnership's business are not prohibited by the Idaho Uniform Partnership Act, and would be more equitable under the circumstances in this case.

"The objective of statutory interpretation is to give effect to legislative intent." *State v. Olivas*, 158 Idaho 375, 379, 347 P.3d 1189, 1193 (2015) (quoting *State v. Doe*, 156 Idaho 243, 246, 322 P.3d 976, 979 (2014)). Interpretation of a statute "must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *Id.* (quoting *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011)).

Idaho Code section 30-23-802(b)(1) mandates that in winding up a partnership's affairs, the partnership "[s]hall discharge the partnership's debts, obligations, and other liabilities, settle and close the partnership's business, and marshal and distribute the assets of the partnership[.]" The Act provides the framework for distributing a partnership's assets during the winding up of a partnership:

> (a)  In winding up its business, a partnership shall apply its assets, including the contributions required by this section, to discharge

> the partnership's obligations to creditors, including partners that are creditors.
>
> (b) After a partnership complies with subsection (a) of this section, any surplus must be distributed in the following order . . .
>
>> (1) To each person owning a transferable interest that reflects contributions made and not previously returned, an amount equal to the value of the unreturned contributions; and
>>
>> (2) Among partners in proportion to their respective rights to share in distributions immediately before the dissolution of the partnership, except to the extent necessary to comply with any transfer effective under section 30-23-503, Idaho Code.

I.C. § 30-23-806. Section 30-23-806(f) further requires that "*all* distributions made [to the partners] must be *paid in money*." I.C. § 30-23-806(f) (emphasis added).

The plain language of section 30-23-806(f) is unambiguous. If a distribution is made to a partner during the winding up of a partnership's business, the distribution must be paid in money. Such a requirement cannot reasonably be interpreted as allowing distributions to partners in any form other than money. To allow distributions in any other form would contradict the plain language of the statute. The partnership's assets must be reduced to cash before being distributed to the partners.

Our interpretation is in accord with the interpretation of the Supreme Court of Montana on the same issue. In *McCormick v. Brevig*, the Montana Supreme Court interpreted Montana's version of RUPA. 96 P.3d 697 (Mont. 2004). Montana's statute contains similar "in cash" language to the Idaho statute, which the *McCormick* Court interpreted as requiring the partnership's assets be reduced to cash by forced sale before they are distributed to creditors and partners. *Id.* at 702. In *McCormick*, two siblings operated their family ranch together as partners for a number of years. *Id.* at 701–02. After deciding the partnership had to be dissolved and its business wound up, the district court ordered that one of the partners would be allowed 60 days to buy out his sibling's interest in the partnership once the value of her interest had been determined via appraisal. *Id.* at 702. The Montana Supreme Court reversed, determining that the plain language of RUPA makes clear that upon dissolution all partnership assets must be reduced to cash before distribution. *Id.* at 705. The Court reasoned that because the language of the

13

statute required partners to receive their distributions "in cash," the only way to make such distributions was to reduce the partnership's assets to cash before distributing them. *Id.*

Despite the plain terms of the Act, Guenther invites us to read the statute liberally, construing it in a way that allows courts the discretion to wind up a partnership by means other than the compelled liquidation of partnership assets. He cites to the Court of Appeals' decision in *Arnold v. Burgess* in support of his interpretation. 113 Idaho 786, 747 P.2d 1315 (Ct. App. 1987). However, when the Court of Appeals decided *Arnold v. Burgess*, the UPA still governed partnership law in Idaho. RUPA, which governs the partnerships in this case, was enacted over a decade later. The change in statutory schemes that occurred between *Arnold* and the present case vitiates much of the persuasive value of the Court of Appeal's decision. We decline to use the holding in *Arnold* to circumvent the plain language of section 30-23-806(f).

While a rule requiring the forced sale of a partnership's assets upon its dissolution and winding up may seem harsh at first glance, its rigidity is lessened by the fact that the rules for winding up a partnership within section 30-23-806 are default provisions. *See* I.C. § 30-23-105 (With the exception of the specific provisions listed in sections 30-23-105(c) and (d), the partnership agreement governs "relations among the partners as partners and between the partners and the partnership" as well as "the business of the partnership and the conduct of that business . . . ."). A partnership agreement cannot change the requirements of section 30-23-802 that a dissolved partnership must be wound up, its liabilities discharged, and its assets marshalled and distributed. I.C. § 30-23-105(c)(13). But the partnership agreement can alter the default provisions for distribution of partnership assets to partners under section 30-23-806(b) and (c). *See* I.C. § 30-23-105(c)–(d) (where section 30-23-806 is not on the list of unmodifiable provisions). Therefore, partners who agree that liquidation of the partnership's surplus assets upon dissolution is undesirable may pursue an alternate path.

Having determined that, unless otherwise provided in the partnership agreement, partnership assets must be reduced to cash before being distributed to the partners under section 30-23-806, application of the Idaho Uniform Partnership Act to the facts of this case becomes fairly straightforward. Guenther and Ryerson had no written partnership agreement and neither party alleged that their oral agreement provided for distributions of partnership assets in any form other than cash. Therefore, the default provisions of the Idaho Uniform Partnership Act control and the partnership's assets must be reduced to cash before being distributed to the

14

partners. Thus, the district court erred in entering an order allowing Guenther and Ryerson each an opportunity to purchase the property at a given price before it was listed for sale. However, except for fixing the price, the remaining portion of the district court's order requiring the property be listed and sold on the open market is in accord with section 30-23-806.

Because we hold that the partnership property must be reduced to cash before distribution under section 30-23-806, we will also provide guidance for the district court in structuring the sale of the partnership property. Generally, the sale of partnership property is "held in such a manner and on such terms and conditions as the court deems proper." 59A Am.Jur.2d *Partnership* § 709. However, the district court's decision to fix the price at which the property may be listed is flawed. In winding up the partnership's business, the district court should seek to sell the partnership's assets at their fair market value. An asset's "fair market value" is "the amount that a willing buyer, who desires to buy but is under no obligation to buy, would pay a willing seller, who desires to sell but is under no obligation to sell." 59A Am.Jur.2d *Partnership* § 625. Thus, to obtain its fair market value, property should be sold at the highest price the market will bear.

In this case, the district court provided no legal support for its decision to fix the sale price at the amount that it did. Nor did it offer any other explanation. The appraisal on which the district court based the fixed price was obtained by Guenther in an effort to refinance the property, not to sell it. Based on the lack of authority present in the decision to fix the sale price in this case, we can only conclude that it was arbitrarily reached. Accordingly, we instruct the district court on remand to enter a new order allowing the Lost Sage Lane property to be sold at its fair market value.

## B. The district court erred in assigning 100 percent of any post-dissolution increase in equity of the Lost Sage Lane property to Guenther.

Ryerson contends the district court erred because the Lost Sage Lane property remained partnership property during the winding up of the partnership and any surplus from its sale must be distributed according to Idaho Code section 30-23-806. Guenther argues the district court correctly assigned any increase in equity in the Lost Sage Lane Property after the date of dissolution because Ryerson has since abandoned the property and has not contributed towards expenses or upkeep of the property.

As noted, "[a] partnership is an entity distinct from its partners." I.C. § 30-23-201. Therefore, partnership property "belongs to the partnership as an entity, rather than to the

15

individual partners." *See* I.C. § 30-23-203 official cmt. A partnership does not terminate upon dissolution, but continues until its affairs have been completely wound up. I.C. § 30-23-802(a). Explained another way, before a partnership legally ends, three steps must be completed, (1) dissolution, (2) winding-up of the partnership's business or liquidation, and (3) termination of the partnership. *Ramseyer v. Ramseyer*, 98 Idaho 47, 51, 558 P.2d 76, 80 (1976) (citations omitted); *see also* I.C. § 30-23-802.

As explained above, Idaho Code section 30-23-806 governs the distribution of assets during the winding up of a partnership. Section 30-23-806 provides that the partnership's assets should first be used to pay its obligations to any creditors. I.C. § 30-23-806(a). Then, once the partnership's creditors are satisfied, remaining partnership assets are used to repay any unreimbursed contributions made by partners. I.C. § 30-23-806(b)(1). If the partnership does not have sufficient assets to repay all of the partners' unreimbursed contributions under subsection (b)(1), the available assets should be distributed proportionally to the partners based on the amount of their respective contributions. I.C. § 30-23-806(e). Finally, if partnership assets remain, the surplus is distributed to the partners in proportion to their rights to share in partnership profits. I.C. § 30-23-806(b)(2). Absent a partnership agreement to the contrary, every partner "is entitled to an equal share of the partnership profits." I.C. § 30-23-401(a). Therefore, the default rule is that partners share profits per capita, not in proportion to capital contributions. *See* I.C. § 30-23-401(a) official cmt.

In this case, the Lost Sage Lane property is partnership property, and any increase in value in the property, including from the date of dissolution until sale, belongs to the partnership. The partnership did not terminate upon dissolution, but continued for the sole purpose of winding up its business. Although Guenther has been the sole contributor to the development and upkeep of the property since the date of dissolution, that does not mean he is entitled to all increases in equity of the partnership property or that Ryerson has been divested of any interest in the partnership post-dissolution. That is not to say that Guenther should receive nothing for his post-dissolution contributions to the partnership. Rather, his payment of partnership expenses, mortgage payments, development costs, and any other unreimbursed contributions made by him are to be taken into consideration if the partnership has surplus assets, distributable pursuant to Idaho Code section 30-23-806(b). Likewise, any benefit received by Guenther after the date of dissolution, such as the fair rental value of the property for the months he has continued to live

16

there or any profits from the vineyard that have been distributed to him since dissolution, should be used to offset the amount of his total contributions to the partnership. Therefore, the district court erred in determining that Guenther was entitled to 100 percent of any gain in equity in the Lost Sage Lane property that accrued after the date of dissolution.

Furthermore, the district court determined that the partnership's surplus assets would be distributed on a pro rata basis, 76 percent to Guenther and 24 percent to Ryerson. This determination was based on the finding that the partnership's total surplus assets would not exceed the total amount of uncompensated capital contributions made by the partners. However, in conducting its analysis, the district court did not have the benefit of our holding that the Lost Sage Lane property must be sold for its fair market value on the open market. Because the property has not been sold, any profits from its coming sale have not yet been realized by the partnership. Therefore, the exact value of the partnership's assets after being converted to cash is still unknown. However, based on the district court's findings of fact and the arguments of the parties on appeal regarding the value of the property, we can speculate that there will be a surplus of partnership assets after Zions Bank, the partnership's only creditor, has been repaid. If there are surplus partnership assets after Zions Bank has been repaid, they must be distributed pursuant to Idaho Code section 30-23-806(b). Though the district court determined that Guenther had contributed 76 percent, and Ryerson 24 percent of the total partnership contributions, those percentages do not take into account either partner's contributions made after the date of dissolution. Therefore, only after all the partnership's assets have been reduced to cash and the costs of the sale have been paid from the proceeds of the sale can a final determination of each partner's capital contributions be made. Once each partner's right to distribution for uncompensated capital contributions has been satisfied, the remaining partnership assets must be distributed based on each partners right to share in the partnership's profits. Because there was no partnership agreement to the contrary, the default rule controls, Guenther and Ryerson have a right to share equally in the partnership's profits.

In conclusion, on remand the partnership's business should be wound up as follows. After the Lost Sage Lane property is sold and the costs of the sale paid from the proceeds, the partnership's obligation to Zions Bank must be discharged pursuant to Idaho Code section 30-23-806(a). Then the total unreimbursed capital contributions of each partner must be adjusted to include contributions made after the date of dissolution and up to the sale. To determine the

17

total amount of each partners' post-dissolution contributions, a hearing or new trial, if necessary, should be held. Then the partnership's assets must be distributed pursuant to Idaho Code section 30-23-806(b)(1). If there are insufficient partnership assets to fully reimburse each partner for their uncompensated contributions, each partner must receive a pro rata share of the total available assets based on the total amount of their respective contributions. If there are sufficient assets to compensate each partner for their respective contributions, then the remaining assets should be distributed as profits, 50 percent to each partner, pursuant to Idaho Code section 30-23-806(b)(2).

### C. We need not determine whether district court erred in granting summary judgment as to the value of the Lost Sage Lane property.

In light of our holding that the Lost Sage property must be sold during the winding up process, the property's value as of the date of dissolution is immaterial. Regardless of whether the property was worth $600,000 (as found by the district court on summary judgment) or more than $800,000 (as alleged by Ryerson) as of the date of dissolution, its fair market value as of the date it is actually sold will likely be different. The other purpose served by the district court's decision on summary judgment was that it provided a value to be used in calculating how much of the proceeds from the sale of the Lost Sage Lane property constituted post-dissolution equity, which the district court attributed solely to Guenther. Our holding that the district court erred in finding that Guenther was entitled to 100 percent of any increase in equity of the Lost Sage Lane property makes the summary judgment determination immaterial to that issue as well. Therefore, we need not address further whether the district court erred in granting summary judgment as to the value of the Lost Sage Lane property at the time of dissolution.

### D. The district court properly declined to award attorney's fees to Guenther under Idaho Code section 12-120(3).

Guenther argued below and now argues on appeal that he was entitled to attorney's fees as the prevailing party below pursuant to Idaho Code section 12-120(3). The district court determined that Guenther was the prevailing party, but denied his request for attorney's fees on the basis that a commercial transaction was not the gravamen of Guenther's claims because the claims were brought to enforce a statutory scheme. Guenther argues the district court erred because it did not discuss the gravamen of his claims on a claim-by-claim basis. He admits that the gravamen of his claim for judicial dissolution was for the enforcement of a statutory scheme,

18

the Idaho Uniform Partnership Act. However, Guenther argues a commercial transaction was the gravamen of his claim for declaratory judgment and Ryerson's counterclaim.

Idaho Code section 12-120(3) provides:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

I.C. § 12-120(3). "The term 'commercial transaction' is defined to mean all transactions except transactions for personal or household purposes." *Id.* "Under this statute, when a commercial transaction comprises the gravamen of a lawsuit, the prevailing party shall be awarded attorney fees." *Kugler v. Nelson*, 160 Idaho 408, 416, 374 P.3d 571, 579 (2016) (citing *Idaho Transp. Dep't v. Ascorp, Inc.*, 159 Idaho 138, 141, 357 P.3d 863, 866 (2015)). Whether a commercial transaction comprises the gravamen of a lawsuit is an inquiry that is made on a claim-by-claim basis. *Sims v. Jacobson*, 157 Idaho 980, 984–85, 342 P.3d 907, 912–13 (2015) (citing *Willie v. Bd. of. Trs.*, 138 Idaho 131, 136, 59 P.3d 302, 307 (2002)). A prevailing party may still recover under section 12-120(3) when the opposing party alleges a commercial transaction, but a commercial transaction never actually existed. *See Garner v. Povey*, 151 Idaho 462, 469–70, 259 P.3d 608, 615–16 (2011). When the gravamen of a claim is to enforce a statutory scheme, attorney's fees are not appropriate under Idaho Code section 12-120(3). *Kelly v. Silverwood Estates*, 127 Idaho 624, 631, 904 P.2d 1321, 1328 (1995).

Here, Guenther's declaratory action to quiet title and Ryerson's counterclaim alleging she had a 50 percent ownership stake in the partnership were brought in furtherance of judicial dissolution and winding up of the partnership's business. The declaratory action sought to quiet title to the property in the name of the partnership so the property could be sold during the winding up of the partnership. Ryerson's counterclaim was for the sole purpose of determining each partner's ownership interest in the partnership. The focus of both claims was to determine the rights of the partners with respect to the judicial dissolution and winding up of the partnership under the Idaho Uniform Partnership Act. Therefore, the gravamen of both claims was the enforcement of a statutory scheme for dissolution and winding up of partnerships. Therefore, the district court did not err in declining to award attorney's fees under section 12-120(3).

**E. We decline to award attorney's fees on appeal.**

Guenther requests an award of attorney's fees on appeal pursuant to Idaho Appellate Rule 41 and Idaho Code section 12-120(3). For the same reasons discussed above, that Guenther's claim for declaratory judgment and Ryerson's counterclaim to establish her ownership interest in the partnership were brought to enforce the statutory scheme, we decline to award attorney's fees on appeal.

## V. CONCLUSION

For the reasons above, we vacate the district court's order requiring the sale of the Lost Sage Lane property on the open market for a fixed price. We hold that the Idaho Uniform Partnership Act requires the sale of partnership property upon dissolution unless otherwise agreed by the parties. We also hold that the district court erred in fixing the price at which the property was to be listed for sale. We reverse the district court's order attributing 100 percent of post-dissolution increases in equity in the partnership's Lost Sage Lane property to Guenther. We affirm the district court's order denying attorney's fees. Finally, we remand for further proceedings consistent with this opinion. No attorney's fees on appeal. Costs are awarded to Ryerson as the prevailing party.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR.**