# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49628

DAVID W. AXELROD, as Trustee of the
DAVID W. AXELROD FAMILY TRUST
dated June 13, 2017, as restated on September
28, 2018,

    Plaintiff-Counterdefendant-
    Respondent-Cross Appellant,

v.

REID LIMITED PARTNERSHIP, an Idaho
limited partnership; and MICHAEL REID, an
individual,

    Defendants-Counterclaimants-
    Appellants-Cross Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2024 Term

Opinion Filed: July 1, 2024

Melanie Gagnepain, Clerk

SUBSTITUTE OPINION. THE
COURT'S PRIOR OPINION
DATED APRIL 25, 2024 IS
HEREBY WITHDRAWN.

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Teton County. Steven W. Boyce, District Judge.

The judgment of the district court is affirmed in part and vacated in part.

Law Offices of Jonathan S. Willett, Boulder, CO, for Appellant/Cross-Respondent, Reid Limited Partnership. Jonathan S. Willett argued.

Beard St. Clair Gaffney, PA, Idaho Falls, for Respondent/Cross-Appellant, David W. Axelrod, Trustee. Jeffrey D. Brunson argued.

Michael Reid, Appellant/Cross-Respondent pro se.

_____

MEYER, Justice.

This case is a consolidated appeal of issues arising out of a settlement agreement concerning the real property and easement rights of two neighboring landowners. For the reasons set forth below, we affirm in part, vacate in part, and remand the case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

David W. Axelrod as Trustee of the David W. Axelrod Family Trust ("Axelrod") purchased property in Teton County in 2003. Michael Reid owned and operated an organic dairy farm nearby on land owned by the Reid Limited Partnership ("RLP"). Reid also leased land for his farming

1

operations adjacent to the parcel purchased by Axelrod.

At the time of its purchase, the Axelrod parcel was not accessible by road. There were two options for building an access road: (1) build along the two easements provided for in the Axelrod deed (referred to collectively to as the "Miller Easement"), which together would connect to a main highway, or (2) build onto an existing dirt road that came through the RLP property. Reid told Axelrod that he would prefer Axelrod to build onto the existing dirt road because the Miller Easement cut across a pasture he was leasing for grazing. In 2004, Axelrod built onto the existing dirt road, referred to hereinafter as the "RLP Easement."

In 2006, Axelrod built a house on the Axelrod parcel. At first, Axelrod and Reid got along. But in 2011, the relationship between Axelrod and Reid began to sour. At that time, landscape contractors hired by Axelrod sprayed herbicide on and around the RLP Easement, including on some of the RLP land. Reid's dairy farm, certified as "organic and biodynamic," was subject to certain requirements and inspections to maintain its certification, and because of the herbicide being applied, Reid lost organic certification for three years on three or four acres of RLP land around the RLP Easement.

Later, Teton County placed a road sign on the RLP Easement road. Reid observed traffic on the RLP Easement road and was concerned that it would be mistaken for a public road. Reid contacted Axelrod to ask for his help in getting the road sign removed. During this conversation, Reid referred to Axelrod's usage of the RLP Easement as a "handshake agreement," which alarmed Axelrod. Axelrod declined to help Reid and stated that he had a "firm, written easement."

After this conversation, Reid received a letter from Axelrod's attorney demanding that he "either sign a document that confirmed that [Axelrod] had an express written easement or [he] would be sued." Reid refused to sign the document and in early 2017, began blocking off the RLP Easement road.

This led to Axelrod's filing suit seeking clarification about the nature of his easement rights. During the litigation, both Reid and Axelrod filed motions for summary judgment. On April 18, 2018, the district court issued a memorandum decision on the cross-motions for summary judgment. The court concluded that Axelrod did not have an express easement for use of the RLP Easement, but he did have an easement by estoppel. Shortly after this decision, on the day trial was to commence, the parties executed a settlement agreement and stipulated to dismiss the suit. Chief among the obligations undertaken by the parties as part of the settlement agreement was

that, within two years, Axelrod would build a new road along the Miller Easement and thereafter renounce any easement rights in the RLP Easement, and that Reid would be "solely" responsible for the cost and installation of an "up to sixteen-foot (16') wide cattle guard" to be installed "on the Axelrod [p]roperty substantially in the vicinity of the Red Gate . . . ."

In September 2018, Axelrod built the Miller Easement road. Because winter was approaching, Axelrod and Reid discussed when the cattle guard was to be installed and, specifically, whether it should wait until spring. There was initial difficulty in finding a cattle guard that would serve the need and meet the specifications in the Settlement Agreement. Ultimately, the road contractor working for Axelrod found a sixteen-foot cattle guard and was directed by Axelrod to install it "exactly where the red gate" was. Before the end of October 2018, the cattle guard was purchased, installed, and the red gate was removed. Although Reid was involved in discussions with Axelrod about when to put the cattle guard in and in discussions with the contractor about placement, he was not involved in the final selection or ultimate placement of the cattle guard. Reid disagreed with the ultimate placement of the cattle guard because he believed the cattle guard selected was unnecessarily expensive; he was required to pay for it; it was installed almost entirely on Axelrod's property; and he felt it did not serve as an effective barrier for the cows between his organic farm and Axelrod's herbicide-treated property. Reid then put up a blue gate across the Miller Easement road, in a place where the Axelrod, Miller, and RLP property met, so his cows could not access any of Axelrod's property.

As a result of the new barrier across his new road and a breakdown in communication between the parties, Axelrod filed suit on January 6, 2020, alleging that Reid and RLP had failed to abide by a term of the Settlement Agreement that required Reid and RLP to pay "all costs associated with the acquisition and installation of" a cattle guard and had "failed to deal fairly with and act in good faith toward Axelrod . . . ."

On January 31, 2020, Reid, acting pro se, responded in a pleading titled "Response and Cross Complaint" in which he denied all allegations against him and RLP, and asserted myriad claims against Axelrod, including trespass and illegal removal and destruction of his fence.

On February 21, 2020, Axelrod moved to dismiss Reid's cross-complaint for failure to state a claim upon which relief can be granted; for entry of default regarding RLP, who was not represented by counsel; and for the court to take judicial notice of certain facts relating to RLP.

On March 6, 2020, Axelrod filed a motion for summary judgment. On March 9, 2020, Reid

3

filed the "Affidavit of Michael Reid in Support of Response and Counter Complaint" with voluminous attachments.

On March 13, 2020, Axelrod filed a motion to strike Reid's affidavit and a motion to shorten time so his motions could be heard together. Due to court scheduling issues and circumstances incident to the COVID-19 pandemic, the hearing on these motions was continued for two months to May 19, 2020.

In the intervening time, Reid filed several responsive papers: on March 27, 2020, he filed a response to Axelrod's motion for summary judgment; on May 13, 2020, he filed an "Affidavit of Michael Reid in Response to Plaintiff's Motion for Summary Judgment"; and on May 15, 2020, he filed a response to Axelrod's motion to strike.

On May 19, 2020, the district court heard Axelrod's motions during a remote hearing. On the motion for entry of default, the court concluded that RLP was required by law to have counsel. Finding that no prejudice would result from allowing RLP time to obtain counsel, the court ordered that RLP had 30 days for a licensed attorney to enter an appearance and file a responsive pleading on its behalf. On the motion to strike, the court went through Reid's filing paragraph by paragraph, denying the motion as to some paragraphs and granting it as to others. The district court determined that Reid's response to Axelrod's motion to strike was not filed seven days prior to hearing as required by Idaho Rule of Civil Procedure 7 and would not be considered by the court.

Next, the court took up Axelrod's motion for summary judgment. There were several issues with Reid's response to Axelrod's filing: (1) it was only an affidavit—it was not connected to a memorandum; (2) it was not filed 14 days in advance of the hearing as required by Idaho Rule of Civil Procedure 56; and (3) it was never served on Axelrod's counsel. Ultimately, the court concluded, pursuant to Rule 56(e), that Reid, as the nonmoving party, had failed to properly support any assertion of fact or address the assertions of fact in Axelrod's motion for summary judgment. Accordingly, the court granted Axelrod's motion for summary judgment.

On May 29, 2020, Reid filed a motion for reconsideration, citing Idaho Rule of Civil Procedure 60, seeking relief from the court's summary judgment ruling in favor of Axelrod. Shortly thereafter, Axelrod filed a memorandum of costs and attorney fees, requesting that his fees be paid by Reid pursuant to Idaho Rule of Civil Procedure 54, Idaho Code sections 12-120 and 12-121, and Section 3.05 of the Settlement Agreement. While a hearing on the reconsideration motion was pending, counsel for RLP filed an appearance, an answer, and on the morning of the

4

reconsideration hearing, a request to correct a clerical error in the judgment, regarding the inclusion of RLP in the order granting summary judgment.

On July 21, 2020, at the hearing on the motion for reconsideration, the court took up the issue of whether judgment had been entered in error against RLP. After hearing arguments on the issue, the court determined that judgment had indeed been entered in error as to RLP and ordered that judgment against RLP be vacated. The district court then heard arguments related to Reid's motion for reconsideration, ultimately concluding that there were no grounds under Idaho Rule of Civil Procedure 60 that would require reconsideration.

At the conclusion of the hearing, the court agreed to consider Axelrod's memorandum for attorney fees but advised counsel for Axelrod to go through his records and parse out any work with respect to RLP. Ten days later, on July 31, 2020, Axelrod submitted a revised memorandum of attorney fees and affidavit of counsel, showing reductions for work related to RLP.

On August 13, 2020, Reid filed a memorandum in opposition. On September 9, 2020, Reid filed a notice of appeal. On October 9, 2020, the district court issued its written decision on Axelrod's request for attorney fees. The court granted Axelrod's claim for fees and costs associated with litigating against Reid until summary judgment but denied Axelrod's request for additional fees incurred in defending Reid's motion for reconsideration.

On December 22, 2020, Axelrod filed a motion to certify the partial judgment against Reid as final. On December 29, 2020, Reid and RLP filed a joint objection to that motion. The parties were heard on the motion at a status conference on January 5, 2021, during which the court denied the motion.

The remaining issues between RLP and Axelrod were litigated in a four-day trial held August 18, 19, 20, and September 15, 2021. On the third day of the bench trial, Axelrod moved for directed verdict on RLP's trespass counterclaim. The court granted the motion.

At the conclusion of the trial, Axelrod moved for directed verdict on all remaining claims, which included Axelrod's claim for breach of contract and RLP's two remaining counterclaims: violation of the covenant of good faith and fair dealing and conversion. On October 1, 2021, in a written decision, the district court granted Axelrod's motion for directed verdict on all remaining claims.

On December 10, 2021, Axelrod moved for entry of final judgment and submitted a memorandum of attorney fees and costs pursuant to Idaho Rule of Civil Procedure 54, Idaho Code

sections 12-120 and 12-121, and Section 3.05 of the parties' Settlement Agreement. On December 25, 2021, RLP filed a "Memorandum in Opposition to Attorney's Fees and Costs Motion." On January 19, 2022, the court heard the parties on the motions for entry of judgment and for attorney fees. On February 2, 2022, the court issued an order on the request for attorney fees and costs, awarding Axelrod $52,725.20 in attorney fees and $1,043.23 in costs. On February 4, 2022, judgment was entered against RLP and Reid individually. Reid and RLP appeal.

## II. STANDARD OF REVIEW

"An appeal from summary judgment is reviewed under the same standard a district court uses when granting a motion for summary judgment." *Pocatello Hosp., LLC v. Quail Ridge Med. Investor, LLC*, 157 Idaho 732, 737, 339 P.3d 1136, 1141 (2014). "[S]ummary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 737–38, 339 P.3d at 1141–42 (internal quotation marks and citation omitted). "If the evidence reveals no disputed issues of material fact, then summary judgment should be granted." *Id.* at 738, 339 P.3d at 1142.

## III. ANALYSIS

### A. This Court declines to consider Reid's issues on appeal related to Idaho Rule of Civil Procedure 2.2.

The first two issues Reid asserts on appeal concern the timeliness of his filings in opposition to Axelrod's motion for summary judgment. He asserts that, because of circumstances attendant to the COVID-19 pandemic, his filings should not be considered late. Specifically, Reid asserts that the court clerk's office was locked and inaccessible when he needed to access it to notarize his filings, and the court's refusal to consider them on timeliness grounds violates Idaho Rule of Civil Procedure 2.2. Reid contends that the Teton County clerk's office was inaccessible from March 27, 2020, to May 4, 2020, and the deadlines for his filings should have been extended.

Idaho Rule of Civil Procedure 2.2 is entitled "Computing and Extending Time," and subsection (a)(2) is entitled "Inaccessibility of the Clerk's Office." It reads, "[u]nless the court orders otherwise, if the clerk's office is inaccessible, then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." I.R.C.P. 2.2(a)(2).

"'This Court exercises free review over questions regarding the interpretation of the Idaho Rules of Civil Procedure.'" *Ward v. State*, 166 Idaho 330, 332, 458 P.3d 199, 201 (2020) (quoting *Haight v. Idaho Dep't of Transp.*, 163 Idaho 383, 387, 414 P.3d 205, 209 (2018)). "When it comes

6

to motion practice, 'pro se litigants are held to the same standards and rules as those represented by an attorney.'" *Id.* (alteration omitted) (quoting *Kootenai Cnty. v. Harriman-Sayler*, 154 Idaho 13, 17, 293 P.3d 637, 641 (2012)).

At the May 19, 2020, hearing, Reid mentioned his difficulty accessing the court and getting his documents notarized but did not cite Idaho Rule of Civil Procedure 2.2 or make an argument for its application or an extension of time at the hearing. "This Court has long held that substantive issues will not be considered for the first time on appeal." *Woods v. Sanders*, 150 Idaho 53, 57, 244 P.3d 197, 201 (2010) (internal quotation marks, alteration, and citation omitted). "[A] party's failure to object to action by the trial court precludes a party from challenging that action on appeal." *Mackowiak v. Harris*, 146 Idaho 864, 866, 204 P.3d 504, 506 (2009). Because Reid failed to raise his objection based on application of Rule 2.2 and an extension of time at the hearing below, this Court declines to review the ruling of the district court regarding the timeliness of Reid's filings.

## B. The district court did not err in granting summary judgment against Reid.

*1. The district court did not abuse its discretion in refusing to consider Reid's materials prepared in response to Axelrod's motion for summary judgment.*

At the summary judgment hearing, Axelrod argued that Reid's response to the summary judgment motion was untimely. He claimed that it did not comply with Idaho Rule of Civil Procedure 56 because Reid had filed a response styled "Affidavit of Michael Reid in Response to Plaintiff's Motion for Summary Judgment" on May 13, only six days before the hearing. When the court asked Reid whether he had filed anything responding to the motion prior to May 13, Reid replied that he thought he had, but did not have specifics in front of him. The court then said that it found a filing, entitled "Response to Plaintiff's Motion for Summary Judgment," filed by Reid on March 27. The court asked Axelrod if he had received the filing. Axelrod replied that he had not. The court noted that the filing had a certification of service to Axelrod, but asked Reid if he had confirmation of service to Axelrod, and Reid replied that he did not.

Reid argues that his failure to serve Axelrod his response to the summary judgment motion was "excusable neglect" because of the pandemic and that Axelrod's frequent viewing of the court repository alleviated any prejudice.

Axelrod argues that Reid's procedural arguments and his reasons for not filing a timely response are unavailing because of the feasibility of filing under the rules, even under the circumstances of the pandemic. Specifically, Axelrod points to Idaho Rules of Civil Procedure 4

and 5, which allow for electronic filing and the ability to file via facsimile, respectively. Axelrod also points to Idaho Rule of Civil Procedure 2.7 and Idaho Code section 9-1406, both of which allow a litigant to file a supporting declaration in lieu of notarized filings.

Idaho Rule of Civil Procedure 56(b)(2) states that "[t]he answering brief and any opposing documents must be served at least 14 days before the date of the hearing." This Court "review[s] a district court's decision on whether to accept an untimely filed affidavit in connection with summary judgment for an abuse of discretion." *Ciccarello v. Davies*, 166 Idaho 153, 162, 456 P.3d 519, 528 (2019). In discretionary review, this Court uses the four-prong standard, that is, "whether the trial judge: (1) [c]orrectly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 867, 421 P.3d 187, 198 (2018).

The date set for hearing Axelrod's motion for summary judgment was May 19, 2020, so the affidavit filed by Reid on May 13 in support of his response was clearly not timely under the rules. But Reid's March 27 filing was well within the 14-day requirement for filing a response. However, the testimony of Reid at the hearing was that he could not "find anything that would prove" he served the March 27 filing on Axelrod. This admission, coupled with representations by Axelrod's counsel that he had never received the document, rendered the district court's decision declining to consider Reid's responsive filings within the bounds of its discretion. In its oral ruling that followed, the court indicated that it perceived the issue to be within its discretion; then it acted within the outer boundaries of that discretion and consistent with applicable legal standards to the choices before it by granting the motion for summary judgment pursuant to Idaho Rule of Civil Procedure 56(e)(3). The district court's decision was reached by an exercise of reason. Accordingly, we conclude that the district court did not abuse its discretion in refusing to consider Reid's responsive materials.

> 2. *The district court did not err in granting Axelrod's motion for summary judgment because Reid's pleadings and supporting affidavit did not raise genuine issues of material fact.*

Reid argues that there was sufficient evidence in the record to prevent the court from granting Axelrod's motion for summary judgment. Reid contends that there was enough factual evidence that Axelrod's claims were disputed in his "Response to Complaint and Cross Complaint" and his "Affidavit of Michael Reid in Support of Response and Counter Complaint,"

together with the record of disputed facts, even if his response to Axelrod's summary judgment motion is not considered. In response, Axelrod argues that Reid's brief on appeal is written contrary to Idaho Appellate Rule 35(a)(6)—scattered and with very few citations to authority—so Reid's arguments should be dismissed. Axelrod also argues that Reid has failed to establish that the district court erred in granting Axelrod's motion for summary judgment.

Idaho Appellate Rule 35(a)(6) requires "appellants to specify the issues they are raising and provide legal and factual support for those arguments." *Michalk v. Michalk*, 148 Idaho 224, 230, 220 P.3d 580, 586 (2009). Reid's brief is not lengthy, but it sets forth many arguments, with several citations to authority. On the issue of summary judgment, we find adequate argument in Reid's brief to support our review.

In reviewing a district court's ruling on a motion for summary judgment, we recognize that "[t]he burden of establishing the absence of a genuine issue of material fact" rests with the moving party and "[w]e construe the record in the light most favorable to the party opposing the motion[.]" *Finholt v. Cresto*, 143 Idaho 894, 896, 155 P.3d 695, 697 (2007). "However, the nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to withstand summary judgment." *Id.* at 896–97, 155 P.3d at 697–98. "A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id.*

Axelrod's claims against Reid, as well as his motion for summary judgment, were narrowly crafted. They were limited to the contention that Reid had breached the parties' Settlement Agreement by failing to pay for the cattle guard, and that by this inaction, Reid also violated the covenant of good faith and fair dealing. It is undisputed that Reid refused to pay for the cattle guard. Indeed, Reid openly admitted this fact at trial. His arguments on appeal essentially amount to assertions that he was excused from performing under the parties' agreement because Axelrod breached the agreement first. But Reid's assertions are unpersuasive and do not raise genuine issues of material fact.

In Reid's response to the initial complaint, he asserted that Axelrod had not "acted in a manner consistent with the purpose of the Settlement Agreement." Reid alleged that Axelrod breached the agreement by directing the contractor to install the cattle guard in the fall of 2018 when Axelrod had communicated that he may wait until spring. Reid also claimed the cattle guard was more expensive than anticipated and that it was installed in the wrong location. But none of

these actions complained of by Reid contravened the express terms of the parties' agreement. The parties' agreement required that, within two years, Axelrod was to construct a new road along the Miller Easement, the contractor was to select a cattle guard and install it, and Reid was to pay for the cattle guard. The cattle guard was to be placed on the Axelrod property in the vicinity of the red gate. The undisputed facts are that six months after this agreement was entered, Axelrod caused a road to be constructed along the Miller Easement, Axelrod's contractor selected and installed a cattle guard on the Axelrod property at the location of the red gate, and Reid failed to pay for it. There is nothing in the record that casts any more than a slight doubt as to the veracity of these facts. The district court recognized this, and in its ruling declared: the "nonmoving party here, which is Mr. Reid, has failed to properly support any assertion of fact or address the assertions of fact that were set forth in the Motion for Summary Judgment." We agree. Accordingly, we conclude that the district court did not err in granting summary judgment in favor of Axelrod as against Reid.

## C. Pro se litigants are not entitled to leniency.

Reid argues that he was entitled to "wide leeway" in his filings with the trial court because of the difficulty of being a pro se litigant, especially during the pandemic. Axelrod responds that Reid's status as a pro se litigant does not entitle him to greater leeway from the district court and that this argument must fail on appeal.

Axelrod is correct. "Pro se litigants are not accorded any special consideration simply because they are representing themselves and are not excused from adhering to procedural rules." *Michalk*, 148 Idaho at 229, 220 P.3d at 585 (quoting *Nelson v. Nelson*, 144 Idaho 710, 718, 170 P.3d 375, 383 (2007)). Reid's status as a pro se litigant does not grant him any privileges not accorded to other litigants; he is held to the same standard as a represented party. Accordingly, we decline to grant him special treatment or additional consideration solely on this basis.

## D. The district court erred when it dismissed RLP's claim for trespass.

When counsel for RLP entered an appearance and filed its responsive pleading, it included the trespass counterclaim at issue. The claim reads:

> 36. In directing and supervising construction of a road for which the grading, gravel and other buttressing falls upon RLP property, Plaintiff has committed a trespass.

> 37. Moreover, in maintaining the road, Plaintiff has destroyed the fence line by causing gravel and snow to repeatedly exceed the scope of the easement resulting in excessive debris on RLP property.

10

38.  As a result, RLP has suffered damages, including but not limited to, an inability to construct a fence at the edge of its property to protect its livestock and property interests, and re-grading and re-constructing the road to conform with the property boundaries between the RLP and DLMFT [Miller Family] properties.

At trial, Reid testified that RLP transferred the RLP land to him personally in "August or September" of 2019, and that shortly thereafter RLP was dissolved. In December 2020, Reid attempted to re-instate RLP but was notified by the Secretary of State's office that, in the interim, another entity had taken on a name too similar to RLP for it to be re-instated in that name. Reid testified that for this reason, in December 2020, Reid added the word "family," to form the Reid Family Limited Partnership ("RFLP") and transferred the RLP land (then owned by him personally) to RFLP. This last transfer to RFLP was not known to counsel for either party before it was disclosed on the third day of a four-day trial. Accordingly, Axelrod made a motion to dismiss the trespass counterclaim, alleging that RLP was not the owner of the land at the time of the trespass. Shortly thereafter, the court, in a ruling from the bench, declared:

> In considering the record before the [c]ourt, it's clear that, at the time of the alleged trespass, the real property was owned by Michael Reid, an individual, who is -- or was a named party in this case.
>
> And judgment was entered against that individual by the [c]ourt on May 22nd on all claims, including, expressly, the dismissal of those claims. So Mr. Reid owned the property at this point.
>
> Then the Reid Limited Partnership did not own the real property at the time the alleged trespass was committed or it was alleged to have been committed.
>
> And it's axiomatic to the [c]ourt that a material element of any claim for trespass is that one must own property in order for there to be a trespass upon the property.
>
> Without ownership of the property, there can be no claim for trespass as against Reid Limited Partnership. They didn't own the property.
>
> For those reasons, then, the [c]ourt finds that, as a matter of law, the third claim for relief, trespass, in the counterclaim is dismissed.

RLP then moved for reconsideration of the ruling, which the court denied, stating:

> The fact that Michael Reid is a named party to the case and judgment was already entered, he was the titled owner of the property.
>
> So it's not a matter of getting the right party in. It's a matter of the [c]ourt's already made a previous ruling that determines the issue.
>
> And that was on May 22nd of 2020, when Mr. Reid had a summary judgment order entered against him that included dismissal of the trespass claim. He was the owner of the property at the time.

11

RLP argues that the district court erred in dismissing its trespass claim because the claim contained no dates of the alleged trespassory acts, and the trespass is a "continuing tort" because the manner of construction of the Miller Easement road causes continual debris, gravel, and snow to fall outside the easement boundaries. RLP further argues that its trespass counterclaim included the destruction of the northern boundary fence, and asserts that destruction of the fence is "a continuing assault" on the property that was "pled at the early stages of the litigation."

Axelrod argues that the trial court correctly determined that RLP did not own the land in question at the time of the alleged trespass, that RLP mischaracterizes the ruling of the district court in its brief, and that RLP does not provide any authority in support of its contention.

"A reviewing court will uphold factual findings made by the trial court in granting a motion for involuntary dismissal so long as those findings are not clearly erroneous, meaning they are unsupported by substantial and competent evidence." *Day v. Idaho Transp. Dep't*, 172 Idaho 431, 441, 533 P.3d 1227, 1237 (2023) (internal quotation marks omitted) (quoting *Spirit Ridge Min. Springs, LLC v. Frankling Cnty.*, 157 Idaho 424, 426, 337 P.3d 583, 585 (2014)). "Under the clearly erroneous standard, the district court's findings of fact will be liberally construed in favor of the judgment entered." *Id*. (internal quotation marks and citation omitted). "However, this Court exercises free review over the district judge's conclusions of law." *Id.* (quoting *Frost v. Gilbert*, 169 Idaho 250, 263, 494 P.3d 798, 811 (2021)).

"An action for trespass is, at its core, a tort action." *Bliss v. Minidoka Irrigation Dist.*, 167 Idaho 141, 150, 468 P.3d 271, 280 (2020). Idaho law related to trespass prohibits impermissible entry upon or damage to land owned or possessed by another. I.C. § 6-202; *Mueller v. Hill*, 158 Idaho 208, 212–13, 345 P.3d 998, 1002–03 (2015). A party has standing to bring a trespass claim if that party owns or has actual or constructive possession of the real property at the time of trespass. *Mueller*, 158 Idaho at 212–13, 345 P.3d at 1002–03. Trespass claims can also be assigned to another party, thus conferring standing on the assignee, but otherwise trespass claims are personal to the owner or possessor of the land. *Id.*; *Radford v. Van Orden*, 168 Idaho 287, 299–300, 483 P.3d 344, 356–57 (2021); I.C. § 55-402.

Ownership of the land and timing of the alleged trespass are key inquiries here. According to the record before the court, RLP was the owner of the RLP land from 2014 until it was transferred by quit claim deed to Reid in September 2019. However, RLP does not limit its claims to a specific period of time. Instead, RLP asserts that acts beginning with the Miller Easement road

construction and subsequent maintenance, including grading and snow removal, have resulted in "continuous" trespass upon surrounding RLP land of unwanted gravel, snow, and debris.

While Idaho courts have recognized a continuing tort doctrine,[1] RLP has standing to assert trespass, continuing or otherwise, only during its period of ownership. The district court's ruling relied on the fact that RLP did not own the land at the time of the alleged trespass. But RLP did own the land in 2018, when the Miller Easement road was constructed, and therefore has standing to assert a claim for alleged damage incurred to the surrounding RLP land incident to construction of the road and for maintenance, grading, and snow removal until transfer of the land was completed in 2019. While RLP does not have standing to bring trespass claims related to events occurring after RLP transferred the property to Reid in 2019, it was erroneous for the district court to conclude that RLP had not pleaded any claims under which it could proceed. *Brown v. City of Pocatello*, 148 Idaho 802, 807, 229 P.3d 1164, 1169 (2010) ("Under notice pleading, a party is no longer slavishly bound to stating particular theories in its pleadings . . . [a] complaint must merely state claims upon which relief may be granted, and pleadings should be liberally construed . . . ." (internal quotation marks and citation omitted)). For this reason, we conclude that the district court erred in dismissing RLP's counterclaim for trespass.

Though RLP was dissolved in September 2019, it brought this claim, and may pursue it after remand pursuant to Idaho Code section 30-23-802(a). Idaho Code section 30-23-802(a) provides that "[a] dissolved partnership shall wind up its business and, except as otherwise provided in [statutes related to rescinding dissolution], the partnership continues after dissolution *only for the purposes of winding up*." (Emphasis added.) Idaho Code section 30-23-802(b)(2)(C) provides that "[i]n winding up its business, the partnership . . . [m]ay . . . [p]rosecute and defend actions and proceedings, whether civil, criminal or administrative . . . ." Further, this Court has stated that "[a] partnership does not terminate upon dissolution, but continues until after its affairs have been completely wound up." *Guenther v. Ryerson*, 166 Idaho 315, 327, 458 P.3d 184, 196

---

[1] *Woodland v. Lyon*, 78 Idaho 79, 83, 298 P.2d 380, 381 (1956); *Farber v. State*, 102 Idaho 398, 630 P.2d 685 (1981); *Curtis v. Firth*, 123 Idaho 598, 850 P.2d 749 (1993); *Beavertail, Inc. v. United States*, No. 4:12-cv-610-BLW, 2017 WL 3749446, at *10 (D. Idaho Aug. 20, 2017); *Crescent Mine, LLC v. Bunker Hill Mining Corp.*, No. 2:21-cv-00310-DCN, 2022 WL 612394, at *7 (D. Idaho Mar. 2, 2022). In *Woodward*, this Court explained that a landowner could recover for injury to pasture, alfalfa, and grain crops due to a neighboring landowner's filling in the stream bed because "[t]he tort herein alleged [was] not a single wrong, but a continuing one . . . ." 78 Idaho at 83, 298 P.2d at 381. In another context, this Court has defined a continuing tort as "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action." *Glaze v. Deffenbaugh*, 144 Idaho 829, 833, 172 P.3d 1104, 1108 (2007) (quoting *Curtis*, 123 Idaho at 603, 850 P.2d at 754).

(2020). "Explained another way, before a partnership legally ends, three steps must be completed, (1) dissolution, (2) winding-up of the partnership's business or liquidation, and (3) termination of the partnership." *Id.* (citing *Ramseyer v. Ramseyer*, 98 Idaho 47, 51, 558 P.2d 76, 80 (1976)). While RLP is dissolved, it is not yet legally terminated. It continues only for the purpose of winding up its affairs, which, for RLP, includes prosecution of its trespass claim against Axelrod.

**E. The district court did not err when it denied the motion to amend the pleadings to add RFLP as a party.**

During Reid's testimony at trial, it was discovered that Reid had transferred the RLP land to RFLP. Thereafter, RLP's counsel orally moved to amend the pleadings to add RFLP as a party to the action to pursue trespass claims. Axelrod objected, arguing that he would be greatly prejudiced by the addition of a new party "in the middle of trial." Thereafter, the court denied the motion, stating:

> I do find the prejudice would outweigh the discretion I would have to do that at this time, noticing, as you said, [counsel for RLP], that doesn't preclude a prior claim—or another claim in the future, if that's where the matter goes.
>
> But, in terms of this trial, this is the time we had scheduled for trial. We're on the third day. And I'm not going to allow amendment of another party here that, quite frankly, as a practical matter, I don't even know how I'd be able to do that at this point and who would represent that -- that -- that interested party as an entity.
>
> So, with that in mind, the motion is denied.

On appeal, RLP argues that the district court erred in denying its motion to amend the pleadings to add RFLP as a party pursuant to Idaho Rule of Civil Procedure 15 because RFLP is a successor-in-interest to RLP and that Idaho law permits "an amendment to cure a defective pleading . . . unless the noticed party would be unduly prejudiced." RLP also argues that the district court should have allowed the addition of RFLP as a real party in interest pursuant to Idaho Rule of Civil Procedure 17. RLP asserts that Axelrod was not prejudiced because he was on notice from the time of the original counterclaim that destruction of fences that served as a border between the two properties was at issue. In response, Axelrod argues that RLP does not articulate how the trial court abused its discretion in denying the motion.

"A court's decision to allow the amendment of the pleadings is reviewed for an abuse of discretion." *Hayward v. Valley Vista Care Corp.*, 136 Idaho 342, 345, 33 P.3d 816, 819 (2001). Similarly, decisions to grant or deny a Rule 17 motion for joinder are reviewed under the abuse of discretion standard. *Tingley v. Harrison*, 125 Idaho 86, 92, 867 P.2d 960, 966 (1994). Abuse of

14

discretion is determined using a four-prong standard. "That is, whether the trial judge: (1) [c]orrectly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by an exercise of reason." *Lunneborg*, 163 Idaho at 867, 421 P.3d at 198.

In *Hayward v. Vista Valley Corp*, this Court set forth circumstances under which Rules 15 and 17 could be jointly applied to amend pleadings to add a party plaintiff. 136 Idaho at 347–48, 33 P.3d at 821–22. *Hayward* concerned a personal representative who filed a wrongful death action in federal court two days before the expiration of the statute of limitations. *Id.* at 346, 33 P.3d at 820. The personal representative filed another case in state court the same day, with identical facts, asserting contractual claims against the same party. *Id.* at 344, 33 P.3d at 818. When the federal case was dismissed, the personal representative sought to amend his state court claims to include the wrongful death claim, which was now time-barred. *Id.* The district court denied this request, declaring that the personal representative was not a real party in interest because he did not bring the claim as an heir or on behalf of the heirs. *Id.* at 348, 33 P.3 at 822. The district court further concluded that, to pursue the claim, not only would the claim have to be added, but the personal representative would have to add a party or change the party listed on the pleading. *Id.* On review, this Court declared that the district court abused its discretion in refusing to allow the personal representative leave to amend his pleadings because of the minimal substantive difference in the case if leave had been granted, noting that amendment would "merely be changing the representative capacity in which the suit is being brought." *Id.* at 349, 33 P.3d at 823. The Court also quoted a Second Circuit decision declaring that "[a] Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegation as to the events or participants." *Id.* (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2nd Cir. 1997)).

Here, in contrast to *Hayward*, the claims brought by RLP and those likely to be brought by RFLP are closely connected, but there are substantive differences between them. RLP, when it entered its appearance and filed its pleadings, set forth specific claims against Axelrod for trespass. They principally concerned: (1) trespass to RLP land alleged to have occurred due to the construction of the Miller Easement road from which "grading, gravel and other buttressing fall[] upon RLP property" and (2) destruction of the fence line by snow and gravel maintenance of the

road exceeding the scope of the easement. The claims likely to be brought by RFLP differ from those asserted by RLP because they center around fence destruction alleged to have occurred incident to Axelrod's placement of the new fence along the border of the Miller Easement road in May 2021. RLP has stated, both to this Court and below, that it seeks to join RFLP to pursue claims against Axelrod related to the new fence. Further, in denying the trial motion to join RFLP at trial, the district court noted that its ruling did not "preclude a prior claim -- or another claim in the future . . . ." During the pendency of this case, a new case was filed by RFLP against Axelrod asserting trespass by (1) the "discharge of rocks and other debris" from an "unnecessarily wide roadbed" and (2) the removal of the old fence and the erection of the new fence in 2021.

The instant case also differs from *Hayward* because *Hayward* concerned a son who filed as personal representative instead of as heir and was therefore blocked from pursuing his claims under identical facts. This case concerns two separate legal entities: RLP and RFLP, whose claims arise from different facts. Though RLP and RFLP have similar membership and interests, these similarities do not convert the partnerships into a single entity. *See Costa v. Borges*, 145 Idaho 353, 357, 179 P.3d 316, 320 (2008) ("[A] partnership is . . . an entity distinct from its partners[.]"); *Jayo Development, Inc. v. Ada Cnty. Bd. of Equalization*, 158 Idaho 148, 153, 345 P.3d 207, 212 (2015) (holding that common control by a husband and wife of an LLC and corporation did not convert the LLC and corporation into a single entity). Further, more than a year had elapsed between the time RLP was dissolved and RFLP was formed. RLP's arguments that RLP and RFLP are the same entity are unavailing.

Finally, the analysis in *Hayward* was conducted against a backdrop of the statute of limitations: if the Court did not allow amendment of the pleadings in that case, the claims were time-barred and could not be brought elsewhere. *Hayward*, 136 Idaho at 346–47, 33 P.3d at 820–21. The relation back doctrine of Rule 15(c) was vitally important in *Hayward*. Such is not the case here. Claims related to the construction of the Miller Easement road were asserted within the time set by the statute of limitations in the instant case and RFLP's claims regarding the construction of the new fence in May 2021 have been preserved by its new filing in district court. *See* I.C. § 5-218(2).

Due to these many distinctions, *Hayward* does not inform the result in this case. "Rule 17(a) is designed to prevent a forfeiture when determination of the proper party is difficult or when an understandable mistake has been made in selecting the party plaintiff." *Conda P'ship, Inc. v.*

16

*M.D. Constr. Co.*, 115 Idaho 902, 904, 771 P.2d 920, 922 (Ct. App. 1989). Reid was a general partner of RLP and is a general partner of RFLP. He had knowledge of the transfers of the RLP land, as he demonstrated at trial. From his perspective, determination of the proper party to assert claims against Axelrod should not have been difficult. "In determining a reasonable time [in which a party should be joined or substituted], trial courts should consider the good faith of the plaintiff and the prejudice, if any, experienced by the defendant." *Id.* Because RLP sought to add RFLP on the third day of a four-day trial, the district court held that prejudice to Axelrod was sufficient to deny amendment to add a new party during trial. That decision was within the boundaries of the district court's discretion.

For these reasons, we conclude that the district court did not abuse its discretion in declining RLP's request to add RFLP. Accordingly, we affirm the district court's decision declining to allow the amendment of RLP's pleadings to add RFLP as a party.

**F.  The trial court did not err in granting Axelrod's motion for involuntary dismissal.**

On September 15, 2021, at the conclusion of the trial, Axelrod made an oral motion for directed verdict regarding Count I, Breach of Contract, in his own complaint as well as to RLP's remaining counterclaims, which were violation of implied covenant of good faith and fair dealing and conversion. On November 29, 2021, the district court issued its "Memorandum Decision on Plaintiff's Motion for Directed Verdict," granting the motion.

At the outset, we note that, procedurally with respect to RLP's counterclaims, Axelrod's motion should have been a motion for involuntary dismissal pursuant to Idaho Rule of Civil Procedure 41(b). *Spirit Ridge Min. Springs, LLC v. Franklin Cnty.*, 157 Idaho 424, 426, 337 P.3d 583, 585 (2014).

> [A] judge does not render a verdict in a bench trial. Therefore, a directed verdict [motion] at the close of the plaintiff's evidence in a bench trial is inappropriate. A directed verdict is defined as "[a] ruling by a trial judge *taking a case from the jury* because the evidence will permit only one reasonable verdict." Black's Law Dictionary, at 1791 (10th ed. 2014) (emphasis added).

*Id.*

Accordingly, we review the district court's dismissal of RLP's counterclaims under the standard for reviewing a dismissal pursuant to Idaho Rule of Civil Procedure 41(b). "When a defendant moves for an involuntary dismissal at the close of the plaintiff's presentation in a non-jury case, the court sits as a trier of fact and is not required to construe all evidence and inferences to be drawn therefrom in the light most favorable to the plaintiff." *Id.* (quoting *Keenan v. Brooks*,

17

100 Idaho 823, 825, 606 P.2d 473, 475 (1980)). "The trial court is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." *Cummings v. Stephens*, 157 Idaho 348, 355, 336 P.3d 281, 288 (2014) (internal quotation marks and citation omitted). "A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *Id.* "When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court. It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses." *Id.* (quoting *Miller v. St. Alphonsus Reg'l Med. Ctr., Inc.*, 139 Idaho 825, 832, 87 P.3d 934, 941 (2004)). "Although there may be conflicting evidence, substantial and competent evidence exists if there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal." *Hood v. Poorman*, 171 Idaho 176, 186–87, 519 P.3d 769, 779–80 (2002) (alterations, internal quotation marks, and citation omitted).

### 1. Violation of the Implied Covenant of Good Faith and Fair Dealing

Regarding RLP's claim that Axelrod violated the implied covenant of good faith and fair dealing, the court, in its written decision, declared that Axelrod had fulfilled every obligation contemplated under the contract, including constructing the Miller Easement road within six months of the agreement when the terms of the Settlement Agreement required that it be constructed within two years. The court also declared that Axelrod's approval for installation of an expensive cattle guard "instead of a cheaper one" was not a violation of the implied covenant of good faith and fair dealing because Section 1.06 of the Settlement Agreement granted Axelrod's contractor, Matkin, "sole discretion" in installing the cattle guard, which included selection of the guard. The court also pointed to language in Section 1.06 of the agreement that stated, "Contractor will invoice Reid directly and *may* communicate with Reid regarding installation of the cattle guard," to show that the parties' agreement did not require communication with Reid or RLP. (Emphasis added.)

The court discussed the evidence regarding the cost of the cattle guard, noting that Matkin's company had done research on the type of cattle guard and believed the one they found was of good quality; Reid searched for another, less expensive cattle guard in the area from various sellers and was unable to find one; and there was no evidence in the record that Axelrod had influenced the selection of the cattle guard. For these reasons, the court held that Axelrod had not "nullified or significantly impaired any obligation required by the Settlement Agreement by approving the

18

installation of an expensive cattle guard as opposed to a cheaper or used cattle guard."

Regarding whether the cattle guard served as an effective barrier, Reid testified at trial that he was the sole proprietor of the entity that owns and operates the cattle business. The court concluded that RLP did not have any legal interest in the dairy cattle. Accordingly, the court granted a directed verdict in favor of the plaintiffs on RLP's counterclaim for violation of the implied covenant of good faith and fair dealing.

On appeal, RLP argues that Axelrod used the 2017 case (leading to the Settlement Agreement) "as a ruse to facilitate the actual construction of a separate road . . . ." It argues that the timing of the signing of the Settlement Agreement—the night before trial was to begin—was suspect and that the litigation was an attempt to "beat down" Reid. RLP also argues that Axelrod acted in bad faith when he "unilaterally" directed Matkin to install the cattle guard in the fall of 2018 because he had communicated to Reid that it may not happen until Spring, and because the cattle guard selected was an expensive one. RLP also alleges bad faith in Axelrod's guaranteeing payment for the more expensive cattle guard because Reid had expressed discomfort with the price and Reid was responsible under the Settlement Agreement for paying for it.

Axelrod asserts in response that Reid's perspective is irrelevant to this proceeding, that RLP was represented by counsel in entering into the Settlement Agreement, that RLP agreed that the Settlement Agreement would be binding on all the parties, and that RLP entered into the Settlement Agreement for "valuable consideration." Axelrod further argues that the cattle guard was selected and installed as agreed by the parties in Section 1.06 of the Settlement Agreement.

"In every contract there is an implied covenant of good faith and fair dealing, which requires the parties to perform, in good faith, the obligations required by their agreement." *Drug Testing Compliance Grp., LLC v. DOT Compliance Serv.*, 161 Idaho 93, 102–03, 383 P.3d 1263, 1272–73 (2016) (emphasis, internal quotation marks, and citation omitted). "A violation of the covenant occurs when either party violates, nullifies or significantly impairs any benefit of the contract." *Id.* "The implied covenant of good faith and fair dealing does not create independent obligations, it merely applies to contractual obligations." *Id.*

The court's conclusion that Axelrod did not violate the implied covenant of good faith and fair dealing is supported by substantial and competent evidence. Section 1.06 of the Settlement Agreement provides:

Axelrod will contract with Matkin Brothers Excavation, Inc. or another contractor

19

at Axelrod's sole discretion ("*Contractor*") to install the Miller Easement Road. Contractor will install an up-to sixteen-foot (16') wide cattle guard on the Axelrod Property substantially in the vicinity of the Red Gate as identified on <u>Exhibit C.,</u> <u>which gate will be removed</u>. Reid shall be solely responsible for the cost of the cattle guard and all labor and materials associated with its installation, including but not limited to additional grading and/or fill required for its proper installation and incorporation into the Miller Easement Road. Contractor will select the cattle guard and related materials and will determine the construction specifications consistent with the build out for the Miller Easement Road and subject to Axelrod's approval, which will not be unreasonably withheld. Contractor will invoice Reid directly and may communicate with Reid regarding the installation of the cattle guard. Reid will fully cooperate with Contractor and will take no action that will interfere with or impede the construction of the Miller Easement Road or the work of the Contractor, surveyors or others participating in the construction. Once the cattle guard is completely and properly installed Axelrod shall be responsible for its maintenance.

The record supports the conclusion that Axelrod fulfilled the terms of the Settlement Agreement in good faith. He contracted to have the Miller Easement road built within the time specified, and he directed the installation of a 16-foot cattle guard on his property. Pursuant to the terms of the Settlement Agreement, Matkin selected the cattle guard and sought Axelrod's approval. Axelrod provided approval and the cattle guard was installed. Axelrod acted within the terms of the Settlement Agreement. The district court did not err in dismissing this claim.

RLP's argument that the 2017 litigation was a "ruse" so that Axelrod could build a new road is unpersuasive. There is no evidence in the record supporting this claim. By contrast, evidence in the record tends to show that Axelrod spent more than $50,000 developing the RLP Easement road, which he abandoned as soon as the Miller Easement road was built as part of the Settlement Agreement.

RLP's argument that the timing of the Settlement Agreement was coercive is also unpersuasive. As Axelrod points out, both parties were represented by counsel when the Settlement Agreement was signed, each was bound by the terms, and both parties certified that they received valuable consideration for the agreement.

### 2. *Conversion*

The court granted Axelrod's motion for directed verdict on RLP's conversion counterclaim related to the location and placement of the cattle guard. The court determined that the Settlement Agreement was unambiguous and precluded a finding of conversion because testimony at trial established that it was installed "substantially in the vicinity of the red gate" as required by the

20

agreement.

Three elements must be present for a valid conversion claim. They are: "'(1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) the property in question is personal property.'" *Med. Recovery Servs., LLC v. Bonneville Billing & Collections, Inc.*, 157 Idaho 395, 400, 336 P.3d 802, 807 (2014) (quoting *Taylor v. McNichols*, 149 Idaho 826, 846, 243 P.3d 642, 662 (2010)).

The court's conclusion on this claim is supported by substantial and competent evidence. RLP did not have a valid conversion claim against Axelrod relating to placement of the cattle guard. The Settlement Agreement clearly states that the cattle guard was to be installed "on the Axelrod property." It was always intended by the parties that the cattle guard be installed on the Axelrod property—and it was. Axelrod did not "wrongfully gain dominion" of it. As the elements of conversion could not be met under the facts of this case, the district court did not err in dismissing this claim. *See Partout v. Harper*, 145 Idaho 683, 689, 183 P.3d 771, 777 (2008) (affirming the trial court's dismissal of a claim when an essential element had not been established).

### 3. *Breach of Contract*

Axelrod's procedurally inappropriate motion for directed verdict on RLP's counterclaims contained a motion for directed verdict on its own claim against RLP—breach of contract. Requesting a motion for directed verdict in a bench trial for success on one's own claims is highly unusual. Because the district court took the motion under advisement and issued a written decision on the motion—with all its subparts—we treat the district court's decision on Axelrod's breach of contract claim as an adjudication on the merits of the claim. We take this stance because the issuance of the district court's decision served to dismiss the counterclaims and issue judgment in favor of Axelrod on his breach of contract claim. Thereafter, Axelrod moved for entry of final judgment in the case and submitted a memorandum of attorney fees and costs, but there was no more discussion about the merits of the parties' claims, nor was there a further ruling from the court regarding these claims. Thus, we review the district court's decision on appeal for "whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Harris, Inc. v. Foxhollow Constr. & Trucking, Inc.*, 151 Idaho 761, 768, 264 P.3d 400, 407 (2011) (quoting *Independence Lead Mines v. Hecla Mining Co.*, 143 Idaho 22, 26, 137 P.3d 409, 413 (2006)). "This Court will set aside findings of facts only when clearly erroneous. We will

not disturb findings supported by substantial and competent evidence, even if the evidence is conflicting." *Id.* (internal quotation marks and citations omitted).

On appeal, RLP argues that Axelrod breached the agreement by "unilaterally" selecting a cattle guard and guaranteeing its payment, thereby "tak[ing] Mr. Reid out of the discussions" about where to place the cattle guard and which cattle guard to purchase, causing him damages. Because of Axelrod's breach, RLP argues, RLP was excused from performing under the contract.

The trial court determined that there was no ambiguity in the Settlement Agreement, and as such, the parties' duties and responsibilities were clear, declaring that the language in the agreement was "bargained for and agreed to." Regarding the placement of the cattle guard, the court found that testimony from Axelrod and the contractor at trial established that the cattle guard was installed at the same location where the Red Gate was previously located, that Reid "was unable to give a definitive answer as to the location of the Cattle Guard," and that no evidence was given to refute the claim that the cattle guard was installed at the location of the Red Gate. Thus, the trial court concluded that the cattle guard was installed "substantially in the vicinity of the Red Gate" as required by the Settlement Agreement.

The court concluded that the only question left to be decided in ruling on Axelrod's breach of contract claim was whether Reid had breached the agreement. Because it was undisputed that Reid had failed to pay for the cattle guard as agreed in the Settlement Agreement, the court ruled in favor of Axelrod. Our review confirms that the trial court's decision is supported by substantial and competent evidence.

By contrast, there is no evidence that Axelrod "unilaterally" selected the cattle guard in contravention of the agreement as RLP alleges. The evidence presented at trial showed that the Contractor conducted research regarding cattle guards available in the area that would work for the intended purpose and selected the one ultimately installed, after approval was given by Axelrod consistent with the requirements of Section 1.06 of the Settlement Agreement. The evidence also showed that Axelrod directed the Contractor to install it "exactly" where the Red Gate was located. Certainly, this was "substantially in the vicinity of the Red Gate," as the district court concluded. Also important to this discussion is the language in Section 1.06 of the Settlement Agreement regarding the inclusion of Reid in the selection and installation of the cattle guard. As set forth above, it stated that "Contractor will invoice Reid directly and *may* communicate with Reid regarding the installation of the cattle guard." (Emphasis added.) This clearly states that

communication with Reid was not a prerequisite to selection and installation of the cattle guard in accordance with the contract terms. *See Rangen, Inc. v. Idaho Dep't of Water Res.*, 160 Idaho 251, 256, 371 P.3d 305, 310 (2016), *abrogated on other grounds by 3G AG LLC v. Idaho Dep't of Water Res.*, 170 Idaho 251, 509 P.3d 1180 (2022) (stating that "the word 'may' is permissive rather than the imperative or mandatory meaning of 'must' or 'shall'").

The district court concluded that Axelrod did not breach the Settlement Agreement, and therefore, RLP was not excused from performance. Because we find that the district court's decision was supported by substantial and competent evidence, we affirm the judgment of the district court ruling in favor of Axelrod on his contract claim.

## G. Attorney Fees

### 1. *As against Reid*

On May 19, 2020, the trial court granted Axelrod's motion for summary judgment. On May 22, 2020, the court entered judgment against Reid and RLP and dismissed with prejudice all their claims. On May 29, 2020, Reid filed a motion for reconsideration and an affidavit in support of that motion. Before the court heard Reid's motion for reconsideration, on June 2, 2020, Axelrod filed a memorandum of costs and fees requesting $28,215.05. Reid failed to timely respond to the memorandum.

Reid's reconsideration motion, as well as a motion by RLP to correct a clerical error, was heard by the court on July 21, 2020. At the hearing, the court denied Reid's motion to reconsider. It also concluded that RLP was included in the judgment in error. As litigation regarding RLP and Axelrod would continue, the court requested that Axelrod submit another memorandum of attorney fees and costs, with reductions related to RLP. As instructed, Axelrod reviewed time entries and reduced his overall submission by $5,675. His new memorandum requested $22,540.05 in fees and costs.

On July 29, 2021, the court issued an order vacating judgment as to RLP and denying Reid's motion for reconsideration. Shortly thereafter, on July 31, 2021, Axelrod submitted another memorandum for attorney fees and affidavit of counsel for work related to defending the reconsideration motion. The amount sought by Axelrod for defense of this motion was $4,577.50. Reid timely responded to this memorandum and objected to the reasonableness of the fee request.

A hearing on Axelrod's attorney fees motion was conducted on September 15, 2020. On October 9, 2020, the court issued a written decision declining to award fees to Axelrod for

defending the motion to reconsider but awarding Axelrod the entire $22,540.05 requested for fees and costs related to litigating the motion for summary judgment. The court, in describing why it was declining to award attorney fees on the motion for reconsideration, stated:

> What constitutes a "reasonable fee" is a discretionary determination for the trial court, to be guided by the criteria of [Rule] 54(e)(3). *Kelly v. Hodges*, 119 Idaho 872, 876, 811 P.2d 48, 52 (Ct. App. 1991)[;] *Action Collection Servs., Inc., v. Bigham*, 146 Idaho 286, 290, 192 P.3d 1110, 1114 (Ct. App. 2008). Among the factors listed in [Rule 53(e)(3)] is: (L) any other factor which the court deems appropriate in the particular case. The [c]ourt also notes that "[t]he amount of attorney's fees to be awarded is a decision committed to the discretion of the trial court." *H2O Envtl. Inc. v. Farm Supply Distributors, Inc.*, 164 Idaho 295, 297–98, 429 P.3d 183, 185–86 (2018).
>
> In considering the procedural history of this case, and in consideration of Reid's objection to the reasonableness of the fees requested as articulated in his response and argument at hearing, the [c]ourt determines that the fees requested for defending against Reid's Motion to Reconsider are not appropriate, when considering the totality of fees to be awarded in this case as further discussed below. As such the [c]ourt declines to award Axelrod's costs that were incurred in defending against Reid's motion to reconsider.

On appeal, Axelrod argues that the district court erred in not referencing Section 3.05 of the parties' Settlement Agreement in its decision on reconsideration. This was error, Axelrod asserts, because Idaho law requires that, when a party's claim for attorney fees is based on a contract, the criteria in Idaho Rule of Civil Procedure 54(e)(3) do not apply. For this proposition Axelrod cites *Bank of Idaho v. Colley*, 103 Idaho 320, 322, 647 P.2d 776, 778 (Ct. App. 1982); *Chittenden & Eastman Co. v. Leasure*, 116 Idaho 981, 982, 783 P.2d 320, 321 (Ct. App. 1989); and *Farm Credit Bank of Spokane v. Wissel*, 122 Idaho 565, 568, 836 P.2d 511, 514 (1992), *overruled by Miller v. Rocking Ranch No. 3 Property Owners' Association, Inc.*, 173 Idaho 285, ___, 541 P.3d 127, 1293–94 (2024). Thus, Axelrod concludes, the district court erred in basing its denial of fees on Idaho Rule of Civil Procedure 54(e)(3)(L). We agree.

In *Bank of Idaho*, the Idaho Court of Appeals declared that "we cannot sustain the district court in treating the obligation to pay attorney fees differently from the obligation to pay the debt" required under the parties' agreement. 103 Idaho at 326, 647 P.2d at 782.

In *Chittenden*, this Court held that a prevailing party's general entitlement to attorney fees under section 12-120 did not override a valid agreement between the parties limiting the dollar amount that could be claimed or awarded. 116 Idaho at 982, 783 P.2d at 321.

In *Farm Credit Bank*, the Court affirmed the trial court's finding that there was no

"prevailing party" for purposes of awarding costs under Rule 54(d)(1) but vacated the trial court's order because it did not take into consideration the terms of the parties' contract in determining the attorney fee and cost award. In its analysis, the Court declared, "where there is a valid contract between the parties which contains a provision for an award of attorney fees and costs, the terms of that contractual provision establish a right to an award of attorney fees and costs." 122 Idaho at 568–69, 836 P.2d at 514–15.

Recently, *Farm Credit Bank* was overruled by this Court to the extent that it stood for the proposition that non-prevailing parties could be awarded attorney fees and costs pursuant to the terms of a contract between the parties:

> [G]oing forward, to be awarded attorney fees pursuant to a contractual provision, the party seeking fees must be both entitled to attorney fees under the contract and have prevailed on the discrete claim under the contract. . . . It will only be eligible for an award of attorney fees arising from claims on which it prevailed.

*Miller*, 173 Idaho at ___, 541 P.3d at 1292. *Farm Credit Bank*, however, still stands for the proposition that when there is a choice between a statute-based entitlement to attorney fees and a contract-based entitlement to attorney fees, the contractual standard applies. 122 Idaho at 568–69, 836 P.2d at 514–15. This standard was not overruled in *Miller*.

Section 3.05 of the parties' Settlement Agreement concerned the payment of attorney fees. It reads:

> In the event a Party is required to employ an attorney for the enforcement of any right under this Agreement or for the resolution of any dispute arising from this Agreement, with or without suit, the defaulting or non-prevailing Party agrees to pay the non-defaulting or prevailing Party's reasonable attorney fees and costs.

We agree that this mutually-agreed-upon contract term should have been the basis for the attorney fee awards, including those requested by Axelrod for defending against Reid's motion for reconsideration. *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 186, 75 P.3d 743, 747 (2003) ("Where a valid contract between the parties contains a provision for an award of attorney fees, the terms of the contract establish a right to attorney fees."). For this reason, we vacate the district court's refusal to award attorney fees to Axelrod for his defense of Reid's motion for reconsideration. On remand, determination of fees associated with the reconsideration motion should be based on Section 3.05 of the parties' Settlement Agreement. The decision to award attorney fees is at the trial court's discretion and will be reviewed for abuse of that discretion. *Tricore Invs., LLC v. Estate of Warren ex rel. Warren*, 168 Idaho 596, 627, 485 P.3d 92, 123 (2021).

25

*2. As against RLP*

At the conclusion of a four-day trial on Axelrod's and RLP's claims, Axelrod submitted a "Memorandum of Costs and Fees" that requested an award of $12,860.23 in costs and $70,336.25 in attorney fees. The court determined that Axelrod was the prevailing party in the matter and, as such, was entitled to an award of costs pursuant to Idaho Rule of Civil Procedure 54. The court then went through many of the items on Axelrod's list, declining to pay the full amount requested. The result was that Axelrod's request for costs as of right was reduced from $3,043.23 to $1,043.23. After analysis of each of the factors in Idaho Rule of Civil Procedure Rule 54(e)(3), the trial court reduced Axelrod's request for attorney fees by 25%, awarding him $52,725.50.

Axelrod argues that the district court erred in reducing his attorney fees incurred in prevailing over RLP. As the district court's judgment regarding the dismissal of RLP's trespass claim is vacated with this opinion, litigation between the parties to resolve this claim will continue. Accordingly, we vacate the award of attorney fees to Axelrod as against RLP for determination of an appropriate fee award at the conclusion of the proceedings.

*3. On appeal.*

Axelrod requests attorney fees and costs on appeal against both RLP and Reid. Axelrod makes this request under Section 3.05 of the parties' Settlement Agreement and Idaho Code section 12-121. This Court may award attorney fees on appeal pursuant to a contractual provision. *Off-Spec Sols., LLC v. Transp. Invs., LLC*, 168 Idaho 734, 740, 487 P.3d 326, 332 (2021) (citing *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 912, 188 P.3d 846, 854 (2008)). If attorney fees are not awarded to a prevailing party on appeal under a contractual provision for attorney fees, "the amount of . . . recovery on the defendant's contractual obligation would be reduced, contrary to the purpose of the contractual provision for payment of attorneys' fees in the event of suit brought" to enforce the contract. *Vaughn v. Vaughn*, 91 Idaho 544, 548, 428 P.2d 50, 54 (1967) (citations omitted).

The litigation between Axelrod and RLP will continue; therefore, there is not yet a prevailing party. If Axelrod is ultimately the prevailing party, then the district court may award him attorney fees against RLP for this appeal pursuant to Section 3.05 of the Settlement Agreement. *Portfolio Recovery Assocs., LLC. v. MacDonald*, 162 Idaho 228, 236, 395 P.3d 1261, 1269 (2017). Costs on appeal are awarded to RLP pursuant to Idaho Appellate Rule 40.

Axelrod has prevailed on all claims brought against Reid and all claims asserted by Reid against Axelrod. Axelrod is awarded attorney fees and costs on appeal against Reid under Section 3.05 of the parties' Settlement Agreement. Because we award attorney fees on appeal under Section 3.05 of the Settlement Agreement, we do not address attorney fees under Idaho Code section 12-121. Axelrod is entitled to costs on appeal against Reid pursuant to Idaho Appellate Rule 40.

Because we award attorney fees on appeal under Section 3.05 of the Settlement Agreement, we do not address attorney fees under Idaho Code section 12-121.

## IV. CONCLUSION

For the foregoing reasons, we affirm the grant of summary judgment as against Reid individually and affirm the district court's judgment dismissing RLP's counterclaims for conversion and violation of the implied covenant of good faith and fair dealing. We also affirm the judgment of the district court on Axelrod's breach of contract claim and the judgment of the district court refusing to allow amendment of the pleadings to add RFLP as a party. We vacate the judgment of the district court dismissing RLP's trespass claim. We affirm the award of attorney fees to Axelrod as against Reid for costs incurred in prosecuting summary judgment claims but vacate the judgment of the district court declining to award attorney fees for defense of the motion for reconsideration. We vacate the attorney fee award as against RLP and remand for further proceedings consistent with this opinion. Axelrod is entitled to attorney fees and costs on appeal for all claims involving Reid. The district court may award Axelrod attorney fees on appeal for all claims involving RLP if he is the prevailing party on remand. RLP is entitled to costs on appeal from Axelrod.

Chief Justice BEVAN and Justices BRODY, ZAHN, and YEE-WALLACE, J. Pro Tem, CONCUR.